TENNESSEE CENT. R. Co. *v.* GILBERT.*

(*Nashville.*   December Term, 1914.)

1. RAILROADS.   Crossing accidents.   Watchman.

 Where a railroad company was by ordinance required to keep
 a watchman at a crossing while it should be in operation and
 running its trains, the watchman was bound to warn trav-
 elers of the approach of a hand car just as much as of trains.
 (*Post, pp.* 203, 204.)

 Case cited and approved:   Lake Shore, etc., R. Co. v. Frantz, 127
 Pa., 297.

2. RAILROADS.   Crossing accidents.   Watchman.   Duty of care.

 While a traveler is not entitled to rely solely upon the absence
 of a watchman at a railroad crossing as an indication of safety,
 yet the absence may be considered by the jury on whether the
 traveler's failure to take precautions was contributory negli-
 gence; hence a charge declaring, as a matter of law, that a
 traveler's failure to stop, look, and listen could not, in the
 absence of the watchman, be considered contributory negli-
 gence, is error.   (*Post, pp.* 204-207.)

 Cases cited and approved:   Roby v. Kansas City Southern R.
 Co., 41 L. R. A. (N. S.), 355, 357; Union Pac. R. Co. v. Rose-
 water, 157 Fed., 171.

FROM WILSON

Appeal from the Circuit Court of Wilson County to
the Court of Civil Appeals, and by *certiorari* from the
Court of Civil Appeals to the Supreme Court.—JNO.
E. RICHARDSON, Judge.

*On the question of the conduct of a flagman or absence from
his post as affecting liability for injury at crossing, see note in 41
L. R. A. (N. S.), 355.

WALTER STOKES, LILLARD THOMPSON and J. H. CAMP-
BELL, for appellant.

W. S. FAULKNER and A. A. ADAMS, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the
Court.

This is an action brought by appellee as plaintiff
in the court below to recover damages for personal
injuries alleged to have been sustained while plaintiff
was traveling on Maple street, in the city of Lebanon,
at the point where the tracks of the railroad company
cross that street.

The declaration alleges, and there was proof intro-
duced tending to show, that plaintiff below was with
her husband driving in a buggy, and had approached
the crossing, intending to pass over, when the servants
of the railroad company negligently drove at a rapid
rate of speed a hand car down the track towards the
crossing and frightened her horse, causing it to turn
suddenly, thereby throwing her on the dashboard, on
account of which she suffered injuries and a miscar-
riage, she being at the time in a delicate condition.

It is further alleged that the track at the point where
the hand car was approaching was hidden from her
view, and that, under an ordinance of the city, the
company was required to keep at said crossing a
watchman to warn the traveling public of danger from
approaching cars, but that at the time of the accident
the watchman was absent from his accustomed post,

and that she believed, in the watchman's absence, that it was safe for her to cross.

The trial judge properly reposed a motion for peremptory instructions in favor of the railroad company, and the jury rendered a verdict in favor of plaintiff.

The case is before this court on writs of *certiorari* to review the rulings of the court of civil appeals made on appeal to that court.

The pertinent portion of the ordinance of the city of Lebanon in relation to the keeping of a watchman at the street crossing in question is, in substance, as follows:

"Said Tennessee Central Railway Company, its successors and assigns, shall . . . station a watchman on the north side of the track where same crosses Maple street . . . between the hours of six a. m. and twelve p. m. of each and every day after said railroad shall be put in operation and running its trains thereon."

It is clear that included within the duties of such watchman was that of warning travelers on Maple street of the approach of a hand car, as well as of the approach of ordinary freight or passenger cars or trains. A hand car is in operation comparatively noiseless, and has not mechanical equipment for sounding an alarm, and for strong reasons such cars fall within the evils against which the ordinance was directed. They have been so treated quite as of course. *Lake Shore, etc., R. Co.* v. *Frantz*, 127 Pa. 297, 18 Atl.,

22, 4 L. R. A., 389. The contention of the defendant railroad company to the contrary is not well taken.

But it is next urged by defendant company that the last words in the quoted ordinance "and running its trains thereon" indicate that only trains of cars were thus to be by a watchman guarded against. These words are not capable of such application; they manifestly were used only to indicate the time when a watchman should be first stationed at the crossing—when the system should be installed.

The main contention of the company is that the trial judge was in error in that portion of his charge which touched upon the contributory negligence of plaintiff and the relation of the absence of the watchman from his post of duty to such negligence.

The trial judge instructed the jury that, if the absence of the watchman from his customary place was relied upon by plaintiff and her husband, "it would not be deemed negligence for them to have failed to exercise the precaution of stopping, looking, or listening for any approaching car," thus absolving plaintiff from contributory negligence as a matter of law.

The position thus taken by the trial judge is not without the support of high authority.

The authorities on the question of the effect of the absence of a flagman from his customary station at a crossing upon the care required to be exercised by a traveler on the highway and about to cross a railway track are by no means in harmony. In one line of cases the holding is that a traveler who is familiar

with the company's custom or practice of maintaining a flagman at a crossing to guard against dangers incident to the traveler from approaching trains or cars is entitled to regard such absence as an indication that it is safe for him to cross the track.

In another class of cases the view is held that such a traveler has no right to rely, for his excuse, upon the absence of such a flagman, and that, when he discovers that the flagman is absent from the post of duty, he is thereby put on his guard, and must exercise ordinary care to protect himself from injury, and that he should himself then look and listen for passing trains.

These two lines are directly opposed, in that the one treats the absence of the flagman as an indication of safety and as a quasi invitation to cross, while the other treats such absence as a matter that puts the traveler upon notice of danger and upon guard for his own safety.

A third group of decisions holds to an intermediate ground, ruling that, while such a traveler is not entitled to rely solely upon the absence of such flagman as an indication of safety, yet that the absence may have some effect to blunt the edge of caution, and therefore towards relieving the traveler from contributory negligence, and that it is for the jury to say whether he is justified under all the circumstances in relying upon the flagman's absence; that is, that the extent to which he is entitled to so rely and to be excused from further looking or listening is a matter for the jury.

A note appended to *Roby* v. *Kansas City Southern R. Co.*, 41 L. R. A. (N. S.), 355, 357, collates the cases aligned as above indicated.

We are of opinion that the last, or what may be termed the intermediate, line announces the best rule. Indeed, the divergence in the reasoning and the rulings of the courts that fall into the first and second classes, respectively, is itself a strong argument that this is true. Thereby is demonstrated that courts differ essentially as to effect of a fact—absence—upon a traveler's conduct, and is, as we think, clearly indicated that the solution is properly a matter for the jury. The absence of the flagman may or may not be looked upon by the jury as an implied assurance to the traveler that the track might be safely crossed. While one may not be relieved by this fact from exercising ordinary care before going upon the track, yet he in conceivable circumstances may be required to exercise practically the same vigilance that might have been required of him had the flagman not been absent. We think that the fact of the watchman's absence should be taken into consideration by the jury in determining whether the traveler exercised due care under the circumstances of the case.

The absence of the watchman may be attributable to various causes ranging from unavoidable occurrence to gross negligence, and the conduct of the traveler may in its effect range from due care to gross negligence.

The argument by appellee in support of the court's charge is, in effect, that the absence of the flagman should, as a matter of law, operate to excuse the traveler from any further duty to look or listen. The precaution imposed by the ordinance was not imposed for the purpose of wholly excusing the traveler upon the street from the taking of precautions for his own safety, if the circumstances required the observance of such. As said by Hook, Circuit Judge, in *Union Pac. R. Co.* v. *Rosewater,* 157 Fed., 171, 84 C. C. A., 619, 15 L. R. A. (N. S.), 808, 13 Ann. Cas., 853:

"To hold otherwise would tend to defeat the very purpose for which gates and flagmen are maintained. It would result not so much in lessening danger and insuring safety as in the mere transference of a mutual obligation to exercise care entirely to the shoulders of one of the parties."

We therefore hold that the court of civil appeals was not in error in its ruling touching the charge of the trial judge on this point; and, further, that the judgment of that court in reversing the case with remand for a new trial should be affirmed. So ordered.