THOMAS CAREY, Appellant, v. D. C. CHASE, JR., Administrator, et al., Appellees.

ASSIGNMENTS: Agreement for Future Assignment—Effect. An agreement or promise to make an assignment at some time in the future creates no right in the promisee such as a court of law can enforce against the creditors of the promisor.

*Appeal from Hamilton District Court.*—G. D. THOMPSON, Judge.

DECEMBER 19, 1919.

PLAINTIFF, claiming to be assignee of certain funds in the hands of the administrator, brings this action, as assignee, against the administrator, to recover the same. Opinion states the facts. At the conclusion of the evidence, the court directed a verdict for defendant. Plaintiff appeals.—*Affirmed.*

*R. G. Remley,* for appellant.

*J. L. Kamrar, O. J. Henderson,* and *D. C. Chase, Jr.,* for appellees.

GAYNOR, J.—To the end that we may have a better understanding of the matters out of which this controversy arises, it is well to have before us the parties to the controversy, the relationship of the parties to the controversy and to each other, and the facts out of which the controversy itself arises.

In 1911, the Webster City Brick & Tile Company was a corporation. The stock in the company was owned and held by the Soule family. C. W. Soule was president, and Alice H. Soule, whose estate is sought to be charged in this suit, was his wife. John F. Carey, a son-in-law of C. W. Soule's, was vice-president and manager. Alice Soule had invested

considerable money in the corporation, and we assume that the corporation was indebted to her therefor at that time. In December, 1911, the Brick & Tile Company became financially embarrassed, and borrowed $2,000 from the plaintiff, Thomas Carey. This loan was made at the solicitation of John F. Carey, son-in-law of the president of the company, and son of the plaintiff in this suit. John F. Carey, for and in behalf of the corporation, executed and delivered to his father, Thomas Carey, a note for $2,000, evidencing the amount so borrowed. Subsequently, the corporation passed into the hands of a receiver, and Alice H. Soule died. The defendant herein is the administrator of her estate. On the 18th day of September, 1918, plaintiff filed the following petition:

"Comes now Thomas Carey, and respectfully represents and shows to the court that Alice H. Soule died intestate, in Hamilton County, on or about the 18th day of June, 1913, and that D. C. Chase, Jr., is now the acting and qualified administrator of the said estate of deceased. That your claimant advanced moneys to the Webster City Brick & Tile Company in an amount of $2,000 or over. That said sums were advanced at the solicitation of Alice H. Soule, deceased, an officer of said company, and that she made an oral assignment *of all her rights and interests* to claimant, to secure him for advancing said funds. That defendant's administrator, D. C. Chase, Jr., has in his hands moneys which he received from the Webster City Brick & Tile Company in behalf of Alice H. Soule, deceased. That, because of said oral assignment, said sum is the property of claimant, less credits received by him. Wherefore, plaintiff asks that said claim be allowed and established against said estate in the amount of $2,000, and that the administrator be ordered to pay the same, or as much thereof as he has funds in his hands to do so, and that plaintiff have such other further relief as he is legally entitled to."

We take it that the recitation in the petition that she made an oral assignment of all her rights and interests to claimant means her rights and interests in claims held by her against the Webster City Brick & Tile Company.

The note in controversy was not signed by Alice H. Soule, nor did she receive any of the proceeds of the note, nor was the debt evidenced by said note her debt, and it is not so claimed in the petition. The petition recites that the claimant advanced moneys to the Webster City Brick & Tile Company in the amount of $2,000; that this sum was advanced at the solicitation of Alice H. Soule; that, to secure the plaintiff, Alice H. Soule made an oral assignment of all her rights and interests which she had in or against the Webster City Brick & Tile Company to the plaintiff, to secure him for advancing the funds. It will be noted that it is not a claim filed against the estate on the theory that Alice H. Soule was personally liable for the claim. The claim is to recover from the estate certain funds received and held by the administrator, on the theory that this had been assigned by Alice H. Soule to the plaintiff to secure the payment of the $2,000; that the sum so held is the property of the plaintiff because of said oral assignment, and is not subject to the claim of creditors.

We come to the proof offered to support this. There are but two witnesses, John F. Carey and his wife, Maud Soule Carey. Maud Soule Carey, after qualifying to testify, said:

"I was bookkeeper from 1905 to 1908, and at the same time was secretary of the company. At that time, I was perfectly familiar with its affairs, and knew more or less about them until it encountered its difficulties. Early in December, 1911, my husband negotiated a loan of $2,000 from Thomas Carey. At that time, my husband was vice-president of the company and practically the manager, as my father was in very poor health, and able to give com-

paratively little time to it. In order to get this loan, my husband made a special trip to Clinton, and interviewed his father, and secured the money and brought it back and paid it into the Hamilton County State Bank. Within a month from that time, Thomas Carey came to Webster City relative to that loan. In my father's home at 304 North Des Moines Street, in the presence of mother, father, grandmother, Thomas Carey, John Carey, and myself, there occurred a conversation about this $2,000 loan. Q. Give, as near as you can, the substance of the conversation that took place concerning the $2,000 loan in that family group on that night. A. I would like to say that this was not made—this statement was not made as being made by the Webster City Brick & Tile Company; it was made personally by my mother, and she made the statement to Mr. Thomas Carey that she had several thousand dollars invested in the Webster City Brick & Tile Company which had come to her from her mother and father, from which she hoped to get something, some time, to remunerate him for this $2,000 that he had advanced. That was the sum and substance of the conversation. Of course, it was elaborated upon. Later, in the spring of 1912, other financial difficulties arose in the Webster City Brick & Tile Company. The Webster City Brick & Tile Company were indebted to my mother on notes for over $8,000. These were filed in the receivership proceedings just referred to."

John Carey testified:

"From 1909 on, I was vice-president of the Webster City Brick & Tile Company. I procured the loan from Thomas Carey for $2,000 by going to Clinton, as it was an emergency situation, requiring haste. I was only 24 hours, going down and back. The negotiations were not terminated concerning this loan for three or four weeks. Some time between Christmas and New Year's, Thomas Carey came to Webster City. Father came here to find out what his secu-

rity was to be.  We went to the Soule home, where the general phases of the business and its prospects were discussed. Q. State to the jury what took place at that time.  A. It was an emergency situation, in which money was required for the factory, and our credit was exhausted, and I called upon my father to assist.  And we discussed as a whole, the family and we—at that time, we offered any security that could be had for the money that was raised.  It was an absolute necessity, and Mrs. Soule, at that time, made a statement to him that anything that she might get would be applied to any loss that he might incur.  Thomas Carey had to assume an obligation in order to raise this money; he had no money to put into it; he used his credit to help us, and we pledged to him that he would be secured from loss, if any hazard.  It was an urgency situation, in which the credit of the company was exhausted.  That is a number of years ago.  It is hard to state the conversation correctly, but the statement was made from Mrs. Soule that she would protect him to such extent as she could from anything she might get at any time from the Webster City Brick & Tile Company, the only place she had anything to come from, if anything—she had invested everything she had in that.  I got the $2,000 in the early part of December, and applied it on the company's liabilities at the bank."

The administrator testified on the trial as follows:

"At the present time, I hold $1,369.28, at 6 or 7 months' interest, at 4 per cent, in the form of a certificate of deposit."

He further testifies:

"I have some $1,300 in my hands as administrator of the estate of Alice H. Soule.  This was turned over to me by Mr. Lund, the previous administrator, and he got it from the Webster City Brick Company's case, which was wound up and proceeds distributed about two years ago."

It appears that there are claims filed and allowed against the estate as follows: Claim of Ethel Hathway,

$8,115.20, with 8 per cent interest; claim of Hamilton County State Bank, established and allowed against the estate in the sum of $11,752.56. These creditors were allowed to appear and contest plaintiff's right to appropriate this sum in the hands of the administrator upon his claim, to the prejudice of these defendants. We think they had a right to so do, under the record made here. A mere reading of plaintiff's evidence shows a total failure of proof of facts upon which to predicate the claim urged in this suit. Plaintiff states his proposition in these words:

"There was a constructive transfer of the subject-matter in the instant case, so that the administrator has no right to this money, because it belongs to the plaintiff."

This contention cannot be sustained. As said in *Seymour v. Aultman & Co.*, 109 Iowa 297:

"An agreement to assign in the future, or a parol promise to transfer when certain things should transpire, would not give plaintiffs a right against the debtor. While it might give them a lien, or create an equitable interest in the account, it would not constitute such an assignment as a court of law will recognize. It has been well said that, to constitute an assignment, the assignor must not retain any control over the fund, any authority to collect, or any power of revocation. If he does, it is fatal to the claim of the assignee. The transaction must be of such a character that the fund holder can safely pay, and is compellable to do so, though forbidden by the assignor."

An agreement to assign or transfer is not an assignment. To constitute a valid assignment, there must be a perfected transaction between the parties, intended to vest in the assignee a present right in the thing assigned.

The testimony offered here is simply that Alice H. Soule hoped to get something some time out of the Brick & Tile Company to remunerate plaintiff for this $2,000 that he had advanced, and that whatever she might get would be

applied to any loss that he might incur by reason of having loaned this money to the Brick & Tile Company; that she would protect him to such extent as she could from anything she might get at any time from the Webster City Brick & Tile Company. This falls so far short of establishing that plaintiff is the owner of this particular fund in the hands of the administrator, and so plainly so, that we can add nothing by discussion to the plain import of the evidence itself.

The court was right in directing a verdict for defendants, and the case is, therefore,—*Affirmed.*

LADD, C. J., WEAVER and STEVENS, JJ., concur.