*SOUTHERN RY. CO. *v.* PENLEY.

SOUTHERN RY. CO. *et al. v.* GROGAN.

(*Knoxville,* September Term, 1939.)

Opinion filed December 16, 1939.

---

*See Gaines et al. v. Tennessee Central Ry. Co., p. 389, **infra.**

BURROW & BURROW, of Bristol, for plaintiff in error.

CURTIN & HAYNES, of Bristol, for defendant in error Penley.

CALDWELL, BROWN & O'DELL, of Bristol, for defendant in error Grogan.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

Grogan was injured in a collision between a taxicab belonging to Penley, in which Grogan was riding as a passenger, and a train of the Southern Railway Company at a grade crossing in the City of Bristol. He sued both Penley and the Railway Company for damages for personal injuries. Penley sued the Railway Company for damages to his taxicab. There was a verdict and judgment for Penley in Grogan's suit as to him but Grogan recovered a verdict and judgment for $350 against the Railway Company. Penley also recovered a judgment of $150 against the Railway Company for damages to his taxicab. Both these judgments were affirmed by the Court of Appeals and the Railway Company filed a petition for *certiorari* which we granted. The two cases were tried together below and have come up in one record.

The negligence with which the Railway Company was charged in Penley's declaration was that an automatic

bell signal which the Railway Company had installed at the crossing failed to ring due to improper maintenance and inspection; that no adequate lookout was kept by the engineer and fireman as the train approached the crossing; and that no warning of the approach of this train to the crossing, alleged to have been a dangerous crossing, was given; and that the train was not operated at a reasonable rate of speed.

The negligence with which the Railway Company was charged in Grogan's declaration was that no warning was given of the approach of this train to the crossing, that no proper effort was made to stop the train after it became obvious that a collision was imminent and, construing the declaration fairly, that the train was being operated at an excessive rate of speed.

We do not find any evidence in the record indicating that the Railway Company had been remiss with reference to the maintenance and inspection of this signal device, nor that the Company had knowledge or was chargeable with knowledge that the device was out of order. See *L. & N. Railroad Co.* v. *Frakes,* 11 Tenn. App., 593.

The failure of the automatic signal bell to ring on the approach of the train, which is a controverted issue in this record, cannot therefore be relied on by either plaintiff as a ground of recovery.

Neither do we find any evidence that the train was being operated over this crossing at an excessive rate of speed, nor that there was any failure on the part of the engineer in his effort to stop the train after the taxicab appeared as a potential obstruction in the pathway of the train.

There is evidence, however, offered by plaintiffs below that not only did the automatic signal bell fail to

384

ring but that neither the bell nor the whistle on the engine rang and gave warning of the approach of his train to the crossing. This was another controverted issue of fact, but the evidence of witnesses for plaintiffs that the engine bell did not ring is substantiated by the testimony of the engineer and the fireman. Both said that the automatic device which operated this engine bell was likely to fail in cold weather (such as the weather on the day of the accident), if the train stopped, that the bell would have to be started by hand or by the rope before the automatic device would begin to work again. It appeared from testimony of these men on the engine that the train had made a required stop at the outskirts of Bristol, before reaching the point of the accident. The fireman admitted in his testimony that the bell rope was broken and that he had to get out on the boiler of the engine and start the bell by hand to set it to ringing when the train backed off the crossing where the accident happened.

It is the duty of a railroad company to give warning of the approach of its trains to crossings of its tracks with a street or highway, and this duty is the more urgent if the thoroughfare at this point is much traveled or is a dangerous crossing by reason of obstructions to view. *Hurt* v. *Yazoo & M. V. R. Co.*, 140 Tenn., 623, 205 S. W., 437. Such is the general rule. 52 C. J., 217, 222.

We therefore find evidence in the case to sustain the charge of negligence against the Railway Company in the particular noted and the question in the case is whether Penley, the taxicab driver, and Grogan, his passenger, were guilty of contributory negligence in going upon this crossing without taking proper precautions to satisfy themselves that no train was approaching. It is urged in behalf of the Railway Company that the

plaintiffs were guilty of such contributory negligence as to bar their recovery.

We should observe at this point that the plaintiffs' suits against the Railway Company insofar as they were founded on the railroad precautions statutes, Code Section 2628 *et seq.*, were dismissed on directed verdicts by the trial judge. The cases went to the jury on the common law counts alone.

Prefacing its discussion of the Railway Company's contention that the plaintiffs were barred by their contributory negligence from any recovery, the Court of Appeals made a statement of the immediate facts of the accident, approved by counsel for the Railway Company, as follows:

"This accident occurred on a grade crossing in Shelby Street, Bristol, Tennessee, on the 27th day of January, at about eleven o'clock in the morning, it being a cold day with ice upon the street. The taxi was traveling east and as is shown by the photographs it went down a steep grade, then passing over a short stretch of level ground before entering upon the crossing. The photographs also demonstrate that this was a blind crossing, the driver being unable to see the approach of the train until the car had entered within striking distance of the moving engine because of the building constructed upon the edge of the sidewalk and the edge of the right of way. To protect this crossing against shifting trains and to expedite the traffic, the Railway Company had constructed a signal visible to the approaching traffic from each direction, and a bell rang when a train approached within a certain distance of the crossing. The allegation is that this signal device was out of order and not operating at the time of the accident. The operator of the cab, after taking in his passenger, came down this hill at the

rate of 15 to 20 miles an hour approaching the crossing, and observing the signal to be clear he made no halt at the crossing until he was in such near proximity to it that he could not stop his car after seeing the approaching train; he did apply his brakes and turn his car in the direction the train was traveling down the track, but skidded upon the icy street and was unable to extricate himself and as a result the collision occurred.''

■ The Court of Appeals then referred to section 2683 of the Code, as amended by Pub. Acts 1931, chap. 82 section 3, which is in these words:

''The driver of every motor vehicle is hereby required, when traveling any public road, street, or highway, to come to a full stop before crossing steam or interurban railroad tracks at grade, at a distance of not less than ten feet or more than fifty feet from the nearest rail of such track or tracks, whenever (1) a clearly visible and positive signal gives warning of the immediate approach of a car or railway train, or (2) whenever any such crossing is designated and signposted by the Highway Department of the State of Tennessee as a particularly dangerous crossing; and the Highway Department is hereby authorized to designate particularly dangerous crossings of steam or interurban railways by roads, streets, or highways.''

The Court of Appeals then expressed this view of the effect of the statute upon the duties of operators of motor vehicles approaching a railroad crossing:

''Upon city streets where signal devices are operated, it is the duty of the drivers of cars to stop only, 'whenever (1) a clearly visible and positive signal gives warning of the immediate approach of a car or railway train . . ., (Code, 2683), and this is the universal

practice; what all cautious people do cannot be classified as a negligent act.''

We should remark just here that this crossing was not designated and signposted by the Highway Department of the State as a particularly dangerous crossing. Not being so designated, but an automatic signal device having been installed there, we understand the ruling of the Court of Appeals to have been that the driver of the taxicab was free to go over and on the railroad track, the signal bell not ringing, and was relieved of the usual obligations resting upon a driver about to pass over the railroad track.

We think this is a mistaken view and cannot be maintained, particularly, when we consider section 2684 of the Code, as amended by Public Acts 1931, chapter 82, section 4, immediately following the section referred to by the Court of Appeals. Section 2684 is in these words:

''None of the provisions of the preceding Section shall be construed as abridging or in any way affecting the common-law right of recovery of litigants in damage suits that may be pending or hereafter brought against any railroad company or other common carrier.''

Section 2683 cannot be held to enlarge the common-law right of action of a plaintiff, such as one of these before us, if for no other reason, because section 2684 expressly provides that the preceding section shall not affect the common-law right of recovery of litigants in suits of this character.

Sections 2683 and 2684 of the Code are founded on chapter 36 of the Acts of 1917 and we should point out that *Tennessee Central R. Co.* v. *Page,* 153 Tenn., 84, 282 S. W., 376, dealt exclusively with the statutory right of action of plaintiffs such as these under section 2628

*et seq.,* of the Code and did not consider at all their common-law right of action.

The duty of travelers at grade crossings of railroads and highways, where the railroad company maintains a watchman, that fact being known to the traveler, and the watchman is away from his post of duty and fails to signal the approach of trains, is set out in *Tennessee Cent. Railroad Co.* v. *Gilbert,* 131 Tenn., 201, 205, 174 S. W., 812, 813. The court there said:

". . . while such a traveler is not entitled to rely solely upon the absence of such flagman as an indication of safety, yet that the absence may have some effect to blunt the edge of caution, and therefore towards relieving the traveler from contributory negligence, and that it is for the jury to say whether he is justified under all the circumstances in relying upon the flagman's absence; that is, that the extent to which he is entitled to so rely and to be excused from further looking or listening is a matter for the jury."

We think the rule here laid down is equally applicable to a grade crossing where the railroad company maintains an automatic signal device and the signal device fails to work and give warning of the approach of a train. This seems to be recognized in *Nashville C. & St. L. Ry.* v. *White,* 158 Tenn., 407, 15 S. W. (2d), 1, affirmed in 278 U. S., 456, 49 S. Ct., 189, 73 L. Ed., 452.

The trial judge took this view of the case and submitted the question of plaintiffs' contributory negligence to the jury under a proper charge, following *Tennessee Cent. Railroad Co.* v. *Gilbert, supra,* and the jury resolved the question in favor of the plaintiffs.

For these reasons, upon the grounds stated, the judgments of the Court of Appeals and the judgments of the trial court are affirmed.