FIRST NAT. BANK OF BLOOMINGDALE
v. MANUFACTURERS TRUST CO.
(NORTH JERSEY TRUST CO., Third Party Defendant).

No. 1118.

District Court, D. New Jersey.

Sept. 18, 1941.

J. Chester Massinger, of Paterson, N. J., for plaintiff.

Thomas E. Lynch, of Jersey City, N. J., for defendant and third party plaintiff.

John F. Evans, of Paterson, N. J., for third party defendant.

WALKER, District Judge.

The facts as stipulated by the parties are:

1. On October 16, 1939, and prior and subsequent thereto, the plaintiff was a national banking association doing a general banking business under and by virtue of the laws of the United States of America, with its domicile and place of business in the State of New Jersey. The Manufacturers Trust Company was a banking corporation of the State of New York, domiciled in that state, and the North Jersey Trust Company was a corporation of the State of New Jersey and domiciled in that state.[1]

2. On October 16, 1939, and prior and subsequent thereto, First National had on deposit with Manufacturers upwards of $100,000 in what is commonly designated as a checking or commercial account.

3. On October 16, 1939, First National, having agreed to lend to Richard Albers and Lillian Albers $5,900, on a bond and mortgage executed by them to First National, drew its, First National's, check to them and Mortgage Service Bureau for that amount drawn upon Manufacturers at its banking house or place of business, No. 55 Broad Street, in the City of New York, a true copy of which check is annexed to the Stipulation.

4. On October 16, 1939, said Mortgage Service Bureau, also known as Mortgage Service Bureau, Inc., according to the allegations of the complaint herein filed, without authority from or knowledge of the said Richard Albers and Lillian Albers, caused said check to be endorsed with their names as well as its own and delivered said check to North Jersey.

5. Said North Jersey on the same day endorsed said check as follows: "Pay to the order of any Bank, Banker or Trust Co. October 16, 1939, all prior endorsements guaranteed, The North Jersey Trust Company, Ridgewood, N. J. David E. Roman, Sec'y" and delivered said check to the National City Bank of New York.

6. Said National City Bank of New York on October 17, 1939, presented said check for payment to Manufacturers, who paid out of First National's said checking account with Manufacturers, the face amount of said check, to wit, $5,900, and charged the amount of said check against the account of First National with it, Manufacturers.

7. By reason of the allegations of the complaint, First National paid said sum of $5,900, to said Richard Albers and Lillian Albers after having already paid the same amount to Manufacturers on said check by reason of the same having been charged to First National's account by Manufacturers.

8. Prior to October 16, 1939, to wit, on July 1, 1939, American Surety Company of New York,[2] a corporation of the State of New York, had issued to First

---

[1] The First National Bank of Bloomingdale will be hereinafter referred to as "First National"; Manufacturers Trust Company as "Manufacturers" and The North Jersey Trust Company, Ridgewood, New Jersey, as "North Jersey".

[2] Hereinafter referred to as "American Surety".

National its Bankers Blanket Bond, Standard Form No. 8, Revised, No. 441458K with endorsements thereto attached, and which bond was in force on October 16, 1939.

9. On December 22, 1939, American Surety Company of New York, in pursuance of its obligation on said bond to First National, paid to First National the sum of $5,900, being the face amount of said check under an express agreement between First National and said American Surety Company of New York that First National retain its right to proceed against Manufacturers for the difference between the amount of said payment and the total amount due by Manufacturers to First National, to wit, $63.91, being interest due from Manufacturers to First National from October 17, 1939, the date said check was charged to First National's account with Manufacturers to December 22, 1939, being the date said sum of $5,900 was paid by American Surety Company of New York to First National.

## Discussion.

Rule 17(a) [3] requires that this action be prosecuted in the name of the real party in interest. American Surety paid[4] $5,900 to First National and it became subrogated to all the rights First National had against the persons liable and it is the real party in interest as to said $5,900, unless Section 7[5] of the Bankers Blanket Bond by which American Surety insured First National, makes First National the trustee of an express trust, in which event it would be the real party in interest and could sue in its own name without joining American Surety.

An express trust is a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.[6]

In order to create an express trust the settlor must properly manifest an intention to create such a relationship as constitutes a trust. The manifestation of intention may be by spoken as well as written words or by conduct and an examination of the said Section 7 discloses that it does not effect a transfer of any property right and while the settlor of a trust may be one of the beneficiaries or the sole beneficiary of the trust, there must be an actual conveyance or transfer of the subject matter of the trust, which must be

---

[3] Rules of Civil Procedure for the District Courts of the United States, Title 28 U.S.C.A. following section 723c provides: "Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; * * *".

[4] This is the word used in the stipulation filed by the parties.

[5] Section 7. Salvage

In case of recovery, whether made by the Insured or the Underwriter, on account of any loss coming within the coverage of this bond, from any source other than insurance, suretyship, indemnity or reinsurance, the net amount of such recovery, after deducting the actual cost and expense of making same, shall be applied, if such recovery be made before payment by the Underwriter, as follows: if such loss be in excess of the amount of this bond plus the amount of the insurance of any co-insurers of the Underwriter and plus the amount of any deductible (i. e., the amount over which this bond is written as excess, or that part of any loss or losses which must be deducted before insurance under this bond applies) and of any underlying insurance or suretyship, then such net recovery shall be applied to such excess in reduction of the loss of the Insured and the balance, if any, shall be applied to that part of such loss for which the Underwriter and its co-insurers, if any, are liable; or if there be no such excess loss, then such net recovery shall be applied to that part of such loss for which the Underwriter and its co-insurers, if any, are liable. If such recovery be made after payment by the Underwriter, then such net recovery shall be applied as follows: if there be any such excess loss, then such net recovery shall be applied to such excess, and the balance, if any, shall be applied to the reimbursement of the Underwriter and its co-insurers, if any, proportionately; or if there be no such excess loss, such net recovery shall be applied to the reimbursement of the Underwriter and its co-insurers, if any, proportionately. The Insured shall execute all necessary papers to secure to the Underwriter the rights herein provided for.

[6] Restatement of the Law, Trusts, page 6, No. 2.

128

definite or definitely ascertainable from facts existing at the time of the creation of the trust.[7] The express wording of Section 7 indicates that American Surety retains all its rights to sue for and collect any loss of First National after payment of a claim by American Surety. The recovery referred to in Section 7 is recovery by the Insured or the Underwriter and the court must interpret the Section as giving American Surety or First National the right to proceed to salvage the claim covered thereby. Taken as a whole, it deals with the way money recovered by either shall be shared between them depending on the circumstances involved. In other words, the settlor has retained rights equal to those of the alleged trustee and thereby prevents a decision favorable to the interpretation the plaintiff urges. If First National is not the trustee of an express trust then American Surety is the real party in interest as to the $5,900 it paid.

■■ Where two real parties in interest such as assignor and assignee or subrogor and subrogee sue individually or can sue individually to recover their respective interest, their joinder may ordinarily be compelled on the motion of a defendant,[8] but, if he does not do so it is waived[9]. This right is also subject to Rule 19.[10] Under subdivision (a) of Rule 19, North Jersey claims that American Surety is an indispensable party and as such should be joined as a plaintiff, while First National claims that under subdivision (b) of said Rule, American Surety is only a necessary party and consequently if this court would lose jurisdiction by the joinder they need not be joined as parties plaintiff. Even assuming that we should hold that American Surety is only a necessary party and not indispensable and consequently need not be joined, the only amount First National is entitled to sue for and recover is the unpaid interest, a sum less than the required jurisdictional amount of $3,000, and if we hold that it is an indispensable party, American Surety is a resident of the State of New York as is the defendant, Manufacturers and there is no diversity of citizenship.

Conclusions of Law.

The complaint is dismissed. The court holds that although First National is a real party in interest, the amount due to it is a sum or value of less than $3,000, and jurisdiction is lacking.

The aforesaid decision is reached reluctantly because the object of the new rules is to secure the just, speedy and inexpensive determination of every action and now several actions will in all probability have to be brought where one would suffice if the parties had followed the practice passed upon by the Supreme Court in Luckenbach v. McCahan Sugar Refining Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522, and the Third Circuit in Automobile Insurance Co. v. Springfield Dyeing Co., 109 F.2d 533, 537, and Texas Gulf Sulphur Company, Inc. v. The Plow City, 3 Cir., 122 F.2d 816, decided on September 11, 1941.

---

[7] See Restatement of the Law, Trusts, page 226, No. 76.

[8] Moore's Federal Practice Vol. II, Note 18, Page 2054.

[9] Moore's Federal Practice Vol. II, Note 19, Page 2054.

[10] Rules of Civil Procedure for the District Courts of the United States, Title 28 U.S.C.A. following section 723c.