**YORKSHIRE INS. CO. v. UNITED STATES.**

**HOME INS. CO. v. UNITED STATES.**

Nos. 9616, 9617.

United States Court of Appeals
Third Circuit.

Argued Oct. 19, 1948.

Decided Nov. 5, 1948.

As Amended on Denial of Rehearing
Dec. 6, 1948.

Abraham Frankel, of Asbury Park, N. J. (Frankel & Frankel, of Asbury Park, N. J., on the brief), for appellants.

Alvin O. West, of Washington, D. C. (H. G. Morison, Asst. Atty. Gen., Isaiah Matlack, and Alfred E. Modarelli, U. S. Attys., both of Newark, N. J., and Paul A. Sweeney, Massillon M. Heuser, and Alvin O. West, Attorneys Department of Justice, all of Washington, D. C., on the brief), for appellee.

Before MARIS, GOODRICH, and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

The present appeals raise new and interesting questions under the Federal Tort Claims Act, 28 U.S.C.A. § 931(a) [1948

Judicial Code, 28 U.S.C.A. §§ 1346, 2674], and Rule 17 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The basic facts which present the legal point may be taken to be as follows: A property owner suffers injury to his property by fire through negligence of an employee of the United States acting in the course and scope of his employment. An insurance company pays part of the loss to the property owner under a policy issued by it to him. A second insurance company does the same. Whether the two insurance payments cover the entire loss we do not know and no allegation concerning that fact is found in the complaint of either of the appellants. The two insurance companies bring separate actions against the United States in the District Court for the District of New Jersey claiming to be subrogated to the insured's claim against the United States for the damage done to the property.

In each of the actions the United States moved for dismissal on two grounds. First it said that the Tort Claims Act was not to be interpreted so as to permit the enforcement of rights claimed through subrogation to the position of the person injured.[1] The second ground of the motion was that the actions were prohibited by the Anti-Assignment Act, 31 U.S.C.A. § 203. The defendant's motion prevailed in each case, the District Court putting the decision upon the ground that the Federal Tort Claims Act "does not expressly grant consent to suit by the subrogee of a claimant and that consent of the government to be sued being a relinquishment of sovereign immunity, must be strictly interpreted * * *."

Each insurance company appealed and the two appeals, each presenting identical points, have been argued together. The government does not press the point that it took in the court below. It now makes objection, however, upon another ground. The force of its objection as applied to these appeals may be illustrated by the following hypothetical case: Suppose a property owner suffers damage by fire to the extent of $11,000 by the negligence of an employee of the United States. Suppose the property owner is insured by ten insurance companies, each for $1,000 and each pays the insured the full amount of the policy issued by it to him. In enforcing the liability imposed by the statute, is the United States to be subjected to eleven suits in possibly eleven different places? The property owner still has $1,000 coming to him and each of the insurance companies is subrogated to the extent of $1,000 to the insured's claim against the tortfeasor. It certainly would be an incongruous result if one tort producing one injury to one piece of property could thus be made the subject matter of eleven suits with a consequent inconvenience to government officers and expense to the taxpayers. Yet if two companies can bring individual actions as subrogees for what they paid in this particular case, it is difficult to see why eight more, if similarly interested, could not do so.

The procedural problem finds its setting in Rule 17 of the Federal Rules of Civil Procedure, requiring that every action be prosecuted in the name of the real party in interest. In the law relating to assignment we have an analogy for subrogation which is in the nature of an assignment by operation of law, although originally the rules concerning the latter subject were developed and applied by equity courts. At an early day an assignee of a chose in action was permitted to sue in the assignor's name and later was permitted to sue in his own name under real party in interest statutes. But when there were several partial assignees the rule forbidding splitting causes of action prevented them from suing individually. All could join or be joined in one action as parties plaintiff, or the partial assignee could separately intervene in an action by the assignor.[2]

The same development is to be found, not without some variations and dis-

---

[1] The phrase was: "The Federal Tort Claims Act under which the plaintiff brings this action does not permit derivative suits."

[2] 2 Williston, Contracts § 443 (Rev. ed. 1936); Restatement Contracts § 156 (1932).

sents, with regard to suits of those claiming rights through subrogation.[3] An insurer who has paid an entire loss suffered by the insured is subrogated to his rights. At law he could sue in the name of the insured, in equity or under a real party in interest statute he can sue in his own name.[4]

■ The problem then arises as to the procedural position of a partial subrogee (insurer) under the Federal Rules. There can be little doubt that his equitable rights in any recovery made by the subrogor (insured) qualify the subrogee as a real party in interest under Rule 17(a).[5] Both insured and insurer "own" portions of the substantive right against the tortfeasor. The only reason for preventing suit by the partial subrogee alone is, as in the case of the partial assignee, to preclude inconvenience and expense to a defendant who might be required to defend a number of separate suits arising out of a single claim, if the rule were otherwise.[6] It is, there-

fore, clear that the rule of one claim, one lawsuit, is for the benefit of the defendant, and he is the one who should make a timely claim to join the necessary parties.[7] It is a right which may be waived by a defendant, and it has been so held in federal cases applying state procedural codes under the Conformity Act[8] and by state courts.[9] The result has been approved by secondary authorities and its application urged under the Federal Rules.[10] We think this view is sound and affords a defendant sufficient protection from the embarrassment of numerous lawsuits.

■■ What the United States has thus presented, then, is not a defense upon the merits of the plaintiffs' claim but a procedural rule established for the convenience of it and other defendants similarly situated. And it. claims the protection of that procedural rule for the first time upon these appeals. That fact alone does not necessarily prevent its consideration here.[11] But

---

[3] 2 Moore, Federal Practice § 17.08, p. 2049, n. 9 (1938).

[4] See Note, 96 A.L.R. 865 (1935).

[5] Williams v. Powers, D.C.N.D.Ohio 1941, 2 F.R.D. 362; First Nat. Bank of Bloomingdale v. Manufacturers Trust Co., D.C.D.N.J.1941, 2 F.R.D., 125; McWhirter v. Otis Elevator Co., D.C. W.D.S.C. 1941, 40 F.Supp. 11; 2 Moore, Federal Practice § 17.08, p. 2057 (1938).

[6] This reason appears to underlie the concept that one claim can give rise to but one lawsuit, an idea that has resulted in the denial to the partial subrogee or assignee of the right to sue alone in a number of earlier cases. See, e. g., Southern Bell Telephone & Telegraph Co. v. Watts, 4 Cir. 1895, 66 F. 460; Aetna Ins. Co. v. Hannibal & St. J. R. Co., C.C.E.C.Mo.1874, 1 Fed.Cas. No. 96; Regan v. New York & N. E. R. Co., 1891, 60 Conn. 124, 22 A. 503, 25 Am.St.Rep. 306; Shawnee Fire Ins. Co. v. Cosgrove, 1911, 85 Kan. 296, 116 P. 819, 41 L.R.A.,N.S., 719; Powell & Powell v. Wake Water Co., 1916, 171 N.C. 290, 88 S.E. 426, Ann.Cas.1917A, 1302; London Assurance Co. v. Sainbury, 3 Doug. 245 (1783).

[7] It is clear that the property owner and other insurers, if any, are necessary parties, since their presence in the lawsuit is required to do complete justice by adjusting all rights. But they are not indispensable in the sense that a final decree cannot be made without affecting their interests or leaving the controversy in such a condition that its final determination is inconsistent with equity. See 2 Moore, Federal Practice, p. 2144 et seq. (1938).

[8] Delaware County Com'rs v. Diebold Safe & Lock Co., 1889, 133 U.S. 473, 488, 10 S.Ct..399, 33 L.Ed. 674; Gaugler v. Chicago, M. & P. S. R. Co., D.C.D. Mont.1912, 197 F. 79, 83. [Conformity Act, June 1, 1872, c. 255, 17 Stat. 197, repealed by Act June 25, 1948, § 39, 62 Stat. 869, 992].

[9] Porter v. Lane Const. Corp., 1925, 212 App.Div. 528, 209 N.Y.S. 54, affirmed 1927, 244 N.Y. 523, 155 N.E. 881; Firemen's Ins. Co. v. Oregon R. Co., 1904, 45 Or. 53, 76 P. 1075, 67 L.R.A. 161, 2 Ann. Cas. 360; National Union Fire Ins. Co. v. Denver & R. G. R. Co., 1913, 44 Utah 26, 137 P. 653. See Note, 96 A.L.R. 879, sec. b (1935).

[10] 2 Moore, Federal Practice § 17.08, p. 2057 (1938); 2 Williston, Contracts § 443 (Rev. ed. 1936). See Restatement, Contracts § 156 (1932).

[11] "Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy." Hormel v. Helvering, 1941, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037.

the defense offered does not call for an affirmance upon a procedural ground of a judgment rendered for a substantive reason now abandoned. The United States should have immunity from a multiplicity of suits upon one obligation; but it should pay that obligation if it is found to exist under the statute. It appears that a motion to add further parties was made and dismissed by the District Court for coming out of time. If the property owner is barred by lapse of time and there are no other claimants the defendant need not be subjected to a multiplicity of suits. Rule 42 providing for consolidation is very broad; so is Rule 21 for adding or dropping parties. The liberal provision for amendment in Rule 15 makes possible the allegation of existence or nonexistence of other possible claimants.

The judgments must therefore be reversed and the cases go back for further proceedings in the District Court. If the plaintiffs can so present their case as to give the defendant the procedural protection it is entitled to, they may then have a chance to prove their case on the merits.

The judgments will be reversed and the cases remanded to the District Court for proceedings not inconsistent with this opinion.