**LOUISVILLE & NASHVILLE RAIL-ROAD COMPANY, Appellant,**

v.

**Mrs. Josie S. ROCHELLE, Individually and as Administratrix of the Estate of Giles M. Rochelle, Deceased, Appellee.**

**No. 13213.**

United States Court of Appeals
Sixth Circuit.

Feb. 11, 1958.

John B. Mack, Memphis, Tenn. (Clarence Clifton, Memphis, on the brief; Clifton & Mack, Memphis, Tenn., of counsel), for appellant.

Thomas R. Prewitt, Memphis, Tenn. (Armstrong, McCadden, Allen, Braden & Goodman, Memphis, Tenn., of counsel), for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of a railway crossing accident at Green Corner Crossing in Carroll County, Tennessee. Defendant's [1] freight train, traveling 40 to 45 miles per hour, collided with the 1949 Plymouth car of plaintiff's decedent, driving across the track. Decedent, a United States rural mail carrier, was on his regular route at his regular time. Defendant's train was over an hour earlier than usual and it did not follow its practice of whistling for the crossing, as the conductor stated the train did for all crossings. The crew testified that they were keeping the lookout ahead required by statute but they did not see decedent until he was before them on the track. The train ran at least 3,100 feet after the collision. The crossing, which was used by school buses and persons on both sides of the track, was approached by an upgrade on a gravel road which three witnesses described as steep. One stated in effect that it would be practically impossible to get up the incline without going into low gear. The photographs in evidence are not particularly helpful. They indicate some grade and show a very rough road of either heavy gravel or slag.

Liability was asserted under the common law and also under the Tennessee Lookout Statute which reads as follows:

"65–1208. Accidents—Precautions to prevent—Crossing signals —Whistle or bell—Lookout—Lights. —In order to prevent accidents upon railroads, the following precautions shall be observed:

\*     \*     \*     \*     \*     \*

"(4) Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident."

The jury rendered a general verdict in favor of plaintiff.

A preliminary contention is based upon the court's refusal to sustain defendant's motion to compel the joinder of the United States as coplaintiff in the action upon the ground that it is an assignee of plaintiff under the Federal Employees' Compensation Act, 5 U.S.C. Chapter 15, § 751 et seq., 5 U.S.C.A. § 751 et seq., and hence is the real party in interest. The pertinent portions of the statute read as follows:

"§ 776. Subrogation of United States to employee's right of action; assignment by employee; disposition of moneys collected from person liable. If an injury or death for which compensation is payable under this chapter is caused under circumstances creating a legal liability upon some person other than the United States to pay damages therefor, the commission may require the beneficiary to assign to the United States any right of action he may have to enforce such liability of such other person or any right which he may have to share in any money or other property received in satisfaction of such liability of such other person, or the commission may require said beneficiary to prosecute said action in his own name.

"If the beneficiary shall refuse to make such assignment or to prosecute said action in his own name when required by the commission, he shall not be entitled to any compensation under this chapter.

"The cause of action when assigned to the United States may be prosecuted or compromised by the

---

1. The parties will be designated as in the court below.

commission, and if the commission realizes upon such cause of action, it shall apply the money or other property so received in the following manner: After deducting the amount of any compensation already paid to the beneficiary and the expense of such realization or collection, which sum shall be placed to the credit of the employees' compensation fund, the surplus, if any, shall be paid to the beneficiary and credited upon any future payments of compensation payable to him on account of the same injury.

"§ 777. Adjustment in case of receipt by employee of money or property in satisfaction of liability of third person. If an injury or death for which compensation is payable under this chapter is caused under circumstances creating a legal liability in some person other than the United States to pay damages therefor, and a beneficiary entitled to compensation from the United States for such injury or death receives, as a result of a suit brought by him or on his behalf, or as a result of a settlement made by him or on his behalf, any money or other property in satisfaction of the liability of such other person, such beneficiary shall, after deducting the costs of suit and a reasonable attorney's fee, apply the money or other property so received in the following manner:

"(A) If his compensation has been paid in whole or in part, he shall refund to the United States the amount of compensation which has been paid by the United States and credit any surplus upon future payments of compensation payable to him on account of the same injury. Any amount so refunded to the United States shall be placed to the credit of the employees' compensation fund.

"(B) If no compensation has been paid to him by the United States, he shall credit the money or other property so received upon any compensation payable to him by the United States on account of the same injury."

5 U.S.C. § 783, 5 U.S.C.A. § 783 of the same Act provides:

"The commission is authorized to make necessary rules and regulations for the enforcement of this chapter, and shall decide all questions arising under this chapter."

The Regulations are embodied in 20 Code of Regulations, Sections 3.1 to 3.6, inclusive. The pertinent regulations are as follows:

"§ 3.1 *Prosecution of third party action by beneficiary.* If an injury or death for which compensation is payable under said act is caused under circumstances creating a legal liability upon some person other than the United States to pay damages therefor, the Bureau may require the beneficiary to prosecute an action for damages against such third person. When required by the Bureau, such cause of action shall be prosecuted in the name of the injured employee or of his personal representative by attorneys designated or approved by the Bureau.

"§ 3.2 *Assignment of third party.* If an injury or death for which compensation is payable under said act is caused under circumstances creating a legal liability upon some person other than the United States to pay damages therefor, the beneficiary shall, if required by the Bureau, assign any right of action he may have to the United States. All such assignments shall be in writing and no such cause of action shall vest in the United States unless and until the assignment is accepted by the Bureau.

"§ 3.3 *Refusal to assign or prosecute claim when required; effect.* Refusal on the part of a beneficiary to assign his right of action to the United States or to prosecute said action in his own name when re-

quired by the Bureau shall deprive the employee of all rights to compensation."

This action is prosecuted in the name of decedent's wife and administratrix, plaintiff herein. Defendant contends, however, that an instrument executed by plaintiff on March 8, 1956, constitutes an assignment accepted by the Bureau and that the cause of action has vested in the United States. The instrument reads as follows:

"Agreement to Prosecute
Damage Claim

"In accordance with the provisions of Section 26 and 27 of the Federal Employees' Compensation Act and the request of the Bureau of Employees' Compensation, I hereby authorize Armstrong McCadden Allen Braden & Goodman, special attorney of the Bureau of Employees' Compensation to prosecute my damage claim against the party responsible for the injury sustained me Giles M. Rochelle, dec Rural Letter Carrier (husband), on January 9, 1956, on account of which I am claiming compensation under the Federal Employees' Compensation Act; and I agree not to settle this claim without the written consent of the Bureau of Employees' Compensation or the aforesaid attorney.

"This agreement is not an assignment, but, in consideration of the payment of compensation to me, I agree to execute an assignment to the United States of any right of action I may have arising out of the aforesaid injury, or any right I may have to share in any money paid in satisfaction of the liability of the party responsible for such injury, at any time such assignment is requested by the Bureau of Employees' Compensation.

"I further agree that in the event of recovery of damages, the proceeds shall be distributed in accordance with the provisions of Sections 26 and 27 of the Compensation Act;

and it is further understood that there may be deducted from the gross amount of the settlement the expenses of prosecution, including the attorney's fees approved by the Bureau of Employees' Compensation, which fees do not exceed a sum equal to 25% of the damages recovered in the event of settlement without suit or a sum equal to 33⅓% of the damages recovered in the event suit is filed.

"Mrs. Josie S. Rochelle"

■ Under 5 U.S.C. § 751 et seq., 5 U.S.C.A. § 751 et seq., the rights of the claimant are governed exclusively by the statutory provisions and the Regulations promulgated thereunder. United States v. Klein, 8 Cir., 153 F.2d 55, 59.

■ While the statute gives considerable control to the Bureau of Federal Employees' Compensation, this control is not a substitute, where joinder of the United States is asked, for an assignment executed in writing in accordance with the Regulations. Absent the assignment no interest has vested in the United States. 20 C.F.R. 3.1 to 3.3. The constitutionality of the statute is not questioned and "recovery, if at all, must be had in the mode and by and for the persons, and for the reasons, designated in the Act." United States v. Klein, supra, 153 F.2d 59. It is not asserted that the Regulations are arbitrary or invalid. One of the prerequisites for an assignment is that the Bureau shall request an assignment of the claim. 20 Code of Regulations § 3.2. No such request has been made herein. While there is an agreement on the part of the claimant to assign when requested by the Bureau, this plainly is not a transfer of any present interest. It is merely a promise to transfer the interest in the future. Southern Lumber Company v. Pearce, 5 Cir., 59 F.2d 50; Carey v. Chase, 187 Iowa 1239, 175 N.W. 60. Hence no assignment was executed. This being the case, the United States had no interest in the action and was neither a real nor necessary party. It follows that the testimony of plaintiff as to the control ex-

ercised over the suit by the Bureau in way of selection of an attorney or otherwise has no bearing and was rightly excluded.

Under similar circumstances the courts in construing statutes dealing with the right of a United States agency to indemnification for expenses advanced to an injured employee generally hold that in absence of an assignment the United States has no right of action. See Cox v. Detroit United Railway, 238 Mich. 527, 213 N.W. 710, involving War Risk Insurance Act; Morgan v. Woodruff, Tex. Civ.App., 208 S.W.2d 628, involving Federal Employees' Compensation Act; Dierssen v. Woolever, D.C., 3 F.R.D. 342, involving Workmen's Compensation Act; United States v. Klein, supra, involving Federal Employees' Compensation Act. Cf. Standard Oil Company of California v. United States, 9 Cir., 153 F.2d 958, 963, affirmed 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067, which points out that under the Federal Employees' Compensation Act and the World War Veterans' Act, 38 U.S.C.A. § 421 et seq. the Congress has provided that the Government shall have the privilege of assignment and that the party paying wages and medical expenses of an injured person is not entitled to subrogation or indemnification in absence of a contractual or statutory right.

■ United States v. Aetna Casualty & Surety Company, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171, relied on principally by defendant, held that an insurance company was authorized to sue the United States in its own name upon a claim to which it had become subrogated by payment to an insured who would have been able to bring the action. This decision clearly does not govern the proceeding here. The Aetna Casualty case arose under the Federal Tort Claims Act under which Rule 17(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. was made specifically to apply to the tort claims therein authorized to be asserted against the United States. United States v. Aetna Casualty & Surety Company,

supra, 338 U.S. at page 372, Note 8, 70 S.Ct. at page 211. This controversy arises under the Federal Employees' Compensation Act, which does not incorporate within its provisions Rule 17 (a) of the Federal Rules of Civil Procedure. It is governed by the limitations of that Act as to the necessity of assignment to authorize suit by the United States. Where an Act of Congress provides for assignment to the United States and the valid regulations promulgated under the Act provide that without an assignment the United States has no right to bring the action, the statutory provisions furnish the exclusive remedy and recovery "must be had in the mode and by and for the persons, and for the reasons, designated in the Act." Cf. United States v. Klein, supra, 153 F.2d 59.

■ A principal contention of defendant is that verdict should have been directed in its favor on both counts of the complaint. The common law requires the railroad to give warning of the approach of its train at its crossings within a street or highway. In Hurt v. Yazoo & M. V. R. Co., 140 Tenn. 623, 205 S.W. 437, it was held this duty is all the more urgent if the street or road is much traveled or if the crossing is dangerous because of obstructions to view. Under the common law it is the duty of the employees on the engine to keep a lookout ahead and to use their utmost endeavors to prevent a collision. By the great preponderance of the testimony herein the train did not give warning of its approach to the crossing where an embankment obstructed the view of the crossing to within 25 feet thereof and was made dangerous by the steep incline. A jury question was clearly presented under the common law.

■ As to the statutory count, the railroad employees were required to keep a lookout ahead, to sound the alarm whistle, put down the brakes, and employ every possible means to stop the train and prevent an accident. Louisville & N. R. Co. v. Tucker, 6 Cir., 211

F.2d 325, 330, 331. While the crew testified that the lookout ahead was maintained, their own testimony was self-contradictory to such an extent that the jury was entitled to disregard it. The jury was warranted in finding that decedent's automobile became an obstruction within the striking distance of the train substantially ahead of the engineer. The automobile almost cleared the track before it was struck. As held by this court in Callaway v. Christison, 6 Cir., 148 F.2d 303, opinion by Judge Hicks, this constituted substantial evidence from which the jury might correctly conclude that the car appeared upon the track as an obstruction under the Tennessee Lookout Statute. In that case this court declared that with a showing of similar facts the burden shifted to appellant to show that he had observed the statutory precautions of T.C.A. § 65–1208(4). Here it was contended that the automobile appeared too late to permit the crew on the engine to blow the whistle, apply the brakes, and try to avert the collision. Construing the facts most strongly in favor of plaintiff, as we are compelled to do after verdict and judgment, the majority of the court think the jury was justified in concluding that the train approached a crossing on which the presence of persons and vehicles might reasonably be anticipated, at a rate of speed which the engineer knew would render it impossible to comply with the requirements of the statute if an obstruction appeared on the crossing. Whether the automobile was seen or should have been seen in time to enable the crew to regard it as an obstruction and to comply with the statute was a question of fact for the jury. Louisville & N. R. Co. v. Tucker, supra, 211 F.2d 330.

It was the duty of the crew to see what could be seen by a person of good eyesight. Louisville & Nashville Railroad Company v. Ross, 2 Tenn.App. 384, 391, 392. The jury may have inferred that decedent could have been seen by the crew in the engine coming up the track in low gear and almost immediately, although not simultaneously, within the sweep of the train.

No evidence was introduced as to the actions of decedent as he approached the crossing. In absence of evidence to the contrary, it is the Tennessee rule that decedent was presumed at the time to be exercising ordinary care. Louisville & Nashville Railroad Company v. Frakes and Payne, 11 Tenn. App. 593, 613, 614; Oder v. Parks, 34 Tenn.App. 303, 237 S.W.2d 571, 576.

In the situation presented, with the freight train an hour ahead of schedule, not giving the customary crossing whistle, and decedent slowly driving up a steep grade to the track, reasonable minds might well differ as to basic findings of fact. The court on motion for directed verdict at close of the evidence was compelled to submit the case to the jury unless, viewing the case most favorably to plaintiff, there was no evidence upon some feature necessary to support recovery. Oder v. Parks, supra, 237 S.W.2d 574.

The majority concludes that plaintiff's case was rightly submitted to the jury. Also the issue of contributory negligence was submitted under a correct charge. The jury was entitled to consider that the roughness of the incline might absorb much of decedent's attention. Hurt v. Yazoo & M. V. R. Co., supra, 140 Tenn. 641, 205 S.W. 442. It was entitled to infer that decedent relied upon the custom of the railroad in whistling for this crossing and upon the fact that the whistle was not blown. Southern Railway Co. v. Simpson, 6 Cir., 131 F. 705, 711. The jury could rightfully consider that the absence of a whistle at the crossing blunted "the edge of caution," and that under all the circumstances decedent was justified in relying upon the absence of a signal. Tennessee Central Railway Co. v. Gilbert, 131 Tenn. 201, 205, 174 S.W. 812, 813; Southern Railway Co. v. Penley, 175 Tenn. 380, 384, 134 S.W.2d 177.

▮ Neither did the court err in instructing the jury on the doctrine of the last clear chance. The common-law count of the complaint generally alleged negligence and specifically alleged excess speed, failure to keep a lookout and to give proper warning to persons on the roadway. That allegations almost identical were sufficient to support a charge, on the doctrine of last clear chance was held in Swift & Co. v. Young, 4 Cir., 107 F.2d 170, opinion by Chief Judge Parker. The court there pointed out that in matters of pleading the federal courts are no longer governed by state practice but by the Federal Rules of Civil Procedure. It held that under Rule 8 the complaint was sufficient to justify submitting the evidence to the jury under a charge on the last clear chance doctrine. It also held that if not sufficient the complaint could be amended to conform to the evidence, even after judgment. Rule 15(b). The Tennessee cases cited by defendant are not controlling because the instant controversy is governed by the Federal Rules of Civil Procedure.

▮ Defendant also claims that there was no proof to support the court's charge on last clear chance. The jury was entitled to find that if the decedent was in a position of peril the engineer, by the exercise of ordinary care, should have realized the danger in time to avoid the accident. The physical facts supported an inference that decedent went up the incline at low speed and was within striking distance of the train when the train was a substantial distance down the track and that the crew was not on the lookout to observe decedent's position. No action was taken to apply the brakes or sound the alarm.

▮ In any case the judgment must be upheld under the Tennessee rule that if any count in a declaration is good a verdict for the entire damages should be applied to the good count. T.C.A. § 20-1317; Tennessee Central Railway Company v. Umenstetter, 155 Tenn. 235,

291 S.W. 452. In that case the Court of Appeals of Tennessee held that there was evidence to go to the jury on the statutory count but no evidence to take to the jury on the common-law count. It concluded that a charge on the common-law count must have misled the jury and reversed the judgment in favor of plaintiff. The Supreme Court of Tennessee reversed the judgment of the Court of Appeals on the ground that the general verdict was good since there was evidence of failure to observe the statutory precautions. Here also, as the case was correctly submitted to the jury on both counts, even if there was error in submitting the "Last Clear Chance" doctrine, there can be no reversal.

▮ All other detailed objections have been considered, but the majority finds no reversible error. The charge was thorough and not erroneous. Exceptions now taken to portions of the charge were not raised by special request and were waived. Cooper v. State, 123 Tenn. 37, 127, 138 S.W. 826.

The judgment of the District Court is affirmed.

SHACKELFORD MILLER, Jr., Circuit Judge (dissenting).

I am of the opinion that it was reversible error on the part of the District Judge to deny appellant's motion to require the appellee to join as party-plaintiff either the United States or the Federal Bureau of Employees' Compensation as the real parties in interest, either as assignee or partial subrogee of the claim. Rules 17(a) and 19, Rules of Civil Procedure; Section 777, Title 5 U.S.C.A.; Titus v. Wallick, 306 U.S. 282, 288–289, 59 S.Ct. 557, 83 L.Ed. 653; United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 380–381, 70 S.Ct. 207, 94 L.Ed. 171; Yorkshire Ins. Co. v. United States, 3 Cir., 171 F.2d 374; Gas Service Co. v. Hunt, 10 Cir., 183 F.2d 417, 419–420. See Majestic v. Louisville & N. R. Co., 6 Cir., 147 F.2d 621, 627.