AMERICAN TRUST & BANKING CO. v. PARSONS.—108 S. W. (2d) 187.

Eastern Section.   April 3, 1937.

Petition for Certiorari denied by Supreme Court, July 3, 1937.

C. G. Milligan and Shepherd, Curry & Levine, all of Chattanooga, for plaintiff in error.

Whitaker & Whitaker, of Chattanooga, for defendant in error.

McAMIS, J.   The American Trust & Banking Company, administrator of the estate of Albert Garnier, deceased, has appealed in error to this court from a verdict and judgment rendered in the circuit court of Hamilton county in the sum of $5,000, in favor of Mrs. Bonnie Crews Parsons, as the surviving widow of W. H. Parsons, Jr., who died as the result of an automobile accident occurring in the State of Florida on June 1, 1932. Mr. Garnier was also killed in the same accident, and the American Trust & Banking Company of Chattanooga qualified as his administrator. The declaration alleges that under the laws of the State of Florida an action in tort survived to plaintiff as the surviving widow of the deceased, W. H. Parsons, Jr., and against the estate of Albert Garnier, notwithstanding his death prior to the institution of suit. We shall herein refer to the parties by name, or as plaintiff and defendant as they appeared in the court below, rather than as plaintiff in error and defendant in error.

Section 4211 of the Comp. Gen. Laws and section 2571, Rev. Gen. Statutes of the State of Florida, provide as follows:

"Suits for personal injuries.—All actions for personal injuries shall die with the person, to wit: Assault and battery, slander, false imprisonment, and malicious prosecution; all other actions shall and may be maintained in the name of the representatives of the deceased."

Upon appeal to the Supreme Court from the judgment of the circuit court sustaining a demurrer to the declaration, it was held that the averment that a right of action survived against the estate of the wrongdoer tendered an issue of fact which might be established or refuted on the trial by evidence of the construction placed on such statutes by the courts of the State of Florida and the cause was remanded for a trial upon the merits. Parsons v. American Tr. & Banking Co., 168 Tenn., 49, 73 S. W. (2d), 698.

The case has been tried three times in the circuit court. At the first trial a mistrial was entered because of the inability of the jury to agree. Defendant preserved a wayside bill of exceptions and by separate assignments of error challenges the action of the court in declining to grant a motion for directed verdict at the first trial as well as the action of the court in striking from the record certain pleas. The second trial resulted in a verdict in favor of

plaintiff which was set aside upon motion for a new trial. No exceptions were preserved with respect to it. The third trial resulted in a verdict in the amount already indicated in favor of plaintiff which was approved by the court and from which defendant has appealed in error and assigned a separate group of errors in this court.

In reviewing the action of the court both at the first trial and at the last trial, we shall first consider the assignments dealing with the survival of the cause of action against the estate of Mr. Garnier under the laws of the State of Florida. In so doing, and hereafter in this opinion, we shall refer to the two trials under review as the first trial and second trial.

Following the remand of the case by the Supreme Court, it does not appear that defendant further contested the question of the survival of the action against the estate of Mr. Garnier until the motion for a new trial was filed on July 3, 1936, following the second trial of the case on June 23, 1936. Incorporated in this motion is contained a motion that the court direct a verdict in favor of defendant because the action did not survive against the estate of Mr. Garnier under the terms of the statute or the construction of the same by the courts of Florida. The first trial was held on June 18, 1935, when, at the conclusion of plaintiff's evidence and at the close of all the evidence, defendant moved the court generally for a directed verdict in its favor. A formal motion for a directed verdict was later, and on July 3, 1935, filed, but in neither of the oral motions for a directed verdict nor in the formal motion later filed after the verdict of the jury had been rendered did defendant raise the question of the right of survival. At the second trial defendant at the close of plaintiff's proof in chief as well as at the close of all the evidence orally moved the court generally for a directed verdict in its behalf. In neither of these oral motions was this question raised. Until the filing of the formal motion for a new trial and a directed verdict following the trial of the case on June 23, 1936, and the verdict of the jury in favor of plaintiff, this question seems to have been passed over and not considered either by the court or counsel. In both trials, at the close of plaintiff's evidence, the decisions of the Supreme Court of Florida, notably the decision of that court in Waller v. First Savings & Trust Company, 103 Fla., 1025, 138 So., 780, as reported in the Southern Reporter, were introduced by stipulation as a part of plaintiff's proof. Defendant interposed no objection to the introduction of these decisions in evidence upon the ground now asserted that they fail to support the insistence of plaintiff that the right of survival against the estate of a wrongdoer exists under the statutes set out in the declaration.

It seems to be now conceded that under the laws of the State of

Florida an action of tort survives against the estate of the tort-feasor. In any event, the majority of the court clearly so held in Waller v. First Savings & Trust Company, supra. However, it is insisted that while the right of survival exists it is by virtue of the Constitution and common law of Florida and not by reason of the statute upon which plaintiff's cause of action is laid in the declaration. Hence, it is insisted that there is no evidence to sustain the verdict and judgment and the court erred in refusing to direct a verdict in favor of defendant. Reduced to its ultimate effect, the essence of this insistence is that, while under the proof introduced such an action survives under the laws of the State of Florida, i. e., the Constitution and common law of that state, there is a fatal variance between the averments of the declaration that such right exists under the statute and the proof establishing the existence of the right under the Constitution and common law.

While the question appears not to have been directly decided in any reported case in this state, it is held that a variance between the pleadings and proof is not available upon appeal unless the variance is specifically pointed out at the trial in time to give the plaintiff an opportunity to amend the declaration. Pickett v. Kuchan, 323 Ill., 138, 153 N. E., 667, 49 A. L. R., 499.

In the cited case the court enunciates the rule that where a general motion for a directed verdict is made without specifically raising the question of variance between the pleadings and proof an objection upon that ground is waived.

As we have already seen, general motions for directed verdicts were made at both trials at the conclusion of all the evidence without raising the question of variance, and we think the defendant by so doing waived its right to rely upon a variance between the declaration and the proof. It is true the question was raised after the jury had rendered its verdict by the formal motion for a directed verdict following the second trial, but it was then too late for plaintiff to amend her declaration. The objection is not jurisdictional but is of a technical nature, and since it was made after the conclusion of the trial and after it was too late for plaintiff to amend her declaration, we think any doubt as to the sufficiency of the proof to accord with the averments of the declaration should be resolved in favor of plaintiff. We do not think the circuit judge should be convicted of error for refusing to entertain such an objection made for the first time after three trials all of which were tried upon the same evidence with respect to the laws of Florida.

"In the absence of objection to the introduction of evidence on the ground that it is inadmissible under the pleading, and in the absence of a proper and seasonable objection on the ground of variance, evidence of a matter not pleaded or not specifically or suffi-

ciently pleaded may be admitted and considered and the party introducing the evidence is entitled to the benefit of any cause of action or defense established thereby. . . .'' 49 C. J. 828, sec. 1227.

In Brown v. Brown, 159 Tenn., 551, 554, 20 S. W. (2d), 1037, 1038, Mr. Justice Chambliss, in considering a somewhat similar question, said:

''While proof may not be looked to to supply jurisdictional or other essential requirements of pleading, a doubt as to the sufficiency of the notice conveyed by allegations in the pleadings may be resolved against a defendant when it appears that the defendant proceeds in apparent acceptance of the sufficiency of the pleading in this particular, and when in the progress of the cause all possible doubt is removed by the proof in ample time for the protection of the defendant. This is in harmony with our practice and holdings.'' See, also, Wishone v. Yellow Cab Company (Tenn. App.), 97 S. W. (2d), 452.

Other assignments of the first group relate to the action of the court in sustaining a motion to strike defendant's pleas of res adjudicata and accord and satisfaction. These pleas are based upon a settlement and judgment based thereon by which an insurance company carrying public liability insurance upon the automobile of Mr. Parsons paid a certain sum of money to the estate of Mr. Garnier and other persons injured in the accident. Proof was introduced over the objection of defendant to show that plaintiff was not served with process in that proceeding and was unaware that such a settlement was in progress or that it had been made at the time of the institution of this suit. This is the undisputed evidence upon this question. The plea of accord and satisfaction was properly stricken for the reason that, according to the undisputed evidence, Mrs. Parsons received nothing as a result of the settlement and the plea of res adjudicata was inapplicable for the very apparent reason that Mrs. Parsons was not a party to the proceedings. Other assignments are made to the action of the court in the first trial to which we need not specifically refer, except the first assignment to the effect that there is no evidence to sustain the verdict which will be considered along with assignment number seven upon the same ground included under the second group of assignments.

The accident out of which this suit arose occurred on State Highway No. 5 approximately four miles north of the village of Archer, Fla. Mr. Parsons was going south riding in his Lincoln automobile driven, at the time of the accident, by his brother-in-law, Mr. Crews. Mr. Garnier was proceeding north driving a two-seated Marmon automobile, with his wife on the front seat beside him and his daughter, then thirteen years of age, and a negro servant woman in the back seat.

The accident occurred after dark, some time between 8 and 8:30

p. m. Both automobiles had their lights burning as they approached the scene of the accident.

According to the testimony of Mr. Crews, the driver of the Lincoln automobile in which Mr. Parsons was riding, he dimmed his lights as required by the Florida statute when he observed the approach of the Garnier car. This testimony is supported by the testimony of two witnesses for plaintiff who were traveling behind the Garnier car going north. Mr. Crews testified that he was traveling at the rate of about forty-five miles per hour, which is within the statutory limit in the State of Florida. There is no dispute of this testimony, and there is some evidence that as he passed the home of the witness S. P. Hodge located a short distance north of the point of accident, he was traveling about twenty-five miles per hour. It is in evidence that under the laws of the State of Florida automobiles traveling on the highway at night are required to dim lights within two hundred feet of an approaching vehicle. It is charged that Mr. Garnier failed to dim his lights and was traveling at the rate of sixty miles per hour in violation of the speed statute of forty-five miles per hour. It is insisted that the violation of these statutes constitutes negligence per se which the jury may have found was the proximate cause of the accident.

Mr. Crews testified that the Garnier car had its bright lights burning; that the lights were not dimmed, as required by the statute, up until the instant the cars collided; that the bright lights partially obstructed his vision and prevented his seeing a one-horse wagon driven by the witness Durrance traveling on the right side of the highway going south, until he was within from thirty to fifty feet of the wagon which was not equipped with lights. He states that before seeing the wagon, because of the bright lights of the Garnier car, he depressed his brakes and reduced his speed to below forty-five miles per hour; that when he suddenly saw the wagon ahead of him, it being impossible to stop in the intervening distance, he attempted to pull to the left but the right rear fender of the car struck the left rear wheel of the wagon, deflecting the car from the right side of the highway to the left and into the side of the oncoming Marmon. He states that when he struck the wheel of the wagon he was traveling at about thirty-five miles per hour and that he was traveling at from ten to fifteen miles per hour when the collision occurred. He fixes the speed of the Garnier car at sixty miles per hour, basing his opinion, as he says, upon the noise of the motor and the time required for it to travel from the point where it was first observed by him to the point of collision.

The witnesses Christian and Albertson testified that they came up behind the Garnier car about a quarter of a mile north of the village of Archer; that they were driving at about sixty or sixty-two miles per hour; that they watched the red tail-light of the Garnier

car which was about a quarter of a mile in front of them; and that in the three miles traveled after they first observed the Garnier car they remained approximately the same distance behind it. They state that the road between Archer and the point of the accident is straight and practically level and that they saw the tail-light of the Garnier car until it went out as a result of the collision.

Viewed in the light most favorable to plaintiff, we think the foregoing testimony of Mr. Crews and of Christian and Albertson constitutes material evidence to support a jury finding that Crews was driving at a careful and lawful rate of speed upon his proper side of the highway as he approached the scene of the accident and that Mr. Garnier failed to dim his lights and was driving in excess of forty-five miles per hour. It is true the Marmon car traveled a distance of approximately thirty feet on the shoulder to the right of the paved surface going north and that the accident occurred on Mr. Garnier's side of the highway. In the absence of any explanation on the part of Mr. Crews, the fact that when the collision occurred he was upon the wrong side of the highway would leave an inference that he had lost control of his car as a result of his own negligence. However, he states that his failure to observe the presence of the wagon was caused by the blinding lights of the approaching Garnier car which, according to his testimony, failed to have its lights dimmed up to the time of contact. If this testimony be accepted as true, it affords a basis for a finding that the proximate cause of the accident was the failure of the driver of the Garnier car to observe the statute and dim the lights and tends to absolve Mr. Crews of negligence in colliding with the wagon and thus losing control of his car.

There is countervailing evidence to the effect that Mr. Garnier was not exceeding the speed limit and that he dimmed his lights as required by statute within two hundred feet of the point of collision, but, upon motion for a directed verdict, the court cannot weigh the evidence, and if, in the view of the evidence most favorable to plaintiff, there is any evidence to support a recovery, it is the duty of the court to submit the case to the jury. It is insisted that when the Garnier car reached a point two hundred feet distant where it was required by statute to dim its lights the Lincoln car had already collided with the wagon and that, therefore, if Mr. Garnier failed to dim his lights his failure to do so could not have been a contributing cause of the collision. Considering the relative speed of the two cars as fixed by the witnesses for plaintiff and the distance traveled by the respective cars after the collision with the wagon, the jury would have been warranted in finding, as Mr. Crews testified, that when Mr. Crews lost control of his car as a result of the collision with the wagon the Garnier car must have been less than two hundred feet away. Furthermore, whether the lights on the

Garnier car were dimmed or not there is material evidence that the Garnier car was traveling approximately sixty miles per hour in violation of the speed statute, and the jury may have found that the excessive speed of the Garnier car was the proximate cause of the accident.

The further point is made that the physical condition of the highway and the position of the two cars following the accident were such that testimony to the effect that the Garnier car was traveling at sixty miles per hour could not be true. Without discussing this evidence in detail, we may say that we do not think this evidence is so inconsistent with the testimony of plaintiff's witnesses that their testimony may be rejected as palpably untrue.

Finding no error in the judgment below, it is affirmed, with costs.

Portrum and Ailor, JJ., concur.