## ODER v. PARKS, et al.—237 S. W. (2d) 571.

Eastern Section.   September 17, 1948.

Petition for Certiorari denied by Supreme Court, January 12, 1949.

304

Hale & Wisecarver, of Jefferson City, Donaldson, Montgomery & Kennerly, of Knoxville, for plaintiff in error.

Ben S. Catlett, of Franklin Park, and C. T. Rankin, of Jefferson City, for defendant in error.

GOODMAN, J. Flossie Mae Parks, individually and as administratrix of the Estate of Clifford C. Parks, Deceased, recovered a judgment in the Circuit Court of Jefferson County in the sum of $2000 for the death of her husband, who was fatally injured when he fell or was thrown from a trailer owned and operated by the defendant, Charles Oder.

The defendant's motion for a new trial having been overruled, an appeal in the nature of a writ of error was prayed and perfected to this court. Here he assigns as error the action of the trial court in failing to sustain his motion for a directed verdict, on the grounds:

"(1) There was no evidence of any actionable negligence on the part of the defendant Oder.

"(2) The evidence affirmatively shows as a matter of law that the plaintiff was guilty of such negligence as should have barred the action by his widow-administratrix."

The defendant, Charles Oder, a Geologist employed by the American Zinc Company, at the time engaged in work at the Jarnigan Mines near Jefferson City, lived on the same farm with the decedent, his wife and family. Plaintiff's intestate, Clifford C. Parks, also worked in the Jarnigan Mines. The farm on which they lived was located about a mile South of Jefferson City, Tennessee.

On the afternoon of August 28, 1947, the defendant having rented a house in Jefferson City and being desirous of moving some furniture from a storage place in Jefferson City to the house, requested Parks to assist him in the moving. Defendant had a trailer which he and Parks attached to defendant's Chevrolet coach automobile. According to the defendant Oder, this attachment was accomplished as follows:

"The tongue of the trailer is a steel pipe and I had two pieces welded on that with holes in them and I had an angle iron welded on to my rear bumper with a hole in it. And I run a half-inch bolt through the tongue into this angle iron on the rear end. In addition to that, I have a chin welded on to the front and after fastening it with this bolt and a washer, I also put the chain around the bumper and locked it so that the trailer is fastened right to the car, it can't possibly get loose. If one should get loose, the other should hold it."

He was asked:

"Q. That piece of metal on the car, is it built on the car, the piece of metal on the rear of the car? A. Yes, it is.

"Q. Then, the tongue that has a hole in it slips up and you bolt it through that? A. That's right.

"Q. Now when that is fastened that way, is there any play in it, is the hole as big as the hole in the attachment on the car? A. Almost, there is just enough play for the bolt to go through the hole."

Oder and Parks went to the storage place with the car and trailer and hauled two loads of furniture without incident. On one of these trips, Parks rode in the seat of the car with Oder, and on the other, he rode in the trailer. Having completed these trips, they loaded the trailer again, placing a chair and a chest of drawers in it. Also on this occasion, Parks placed an old rocking chair, which Oder had given him, on top of the chest of drawers;—this, despite Oder's suggestion that he leave it behind. The approximate dimensions of the trailer were shown to be six feet (long) by three feet (wide) with side boards about twelve inches in height. The chest of drawers, standing upright in the trailer, extended some thirty-eight inches above the side boards, one rocking chair was placed in the bed of the trailer and the other rocker, which had been given to Parks, was on top of it. Mrs. Oder was there in her car, at the time they departed on their last trip; and, seeing the chair resting as it was upon the trailer, remarked upon its insecurity. Whereupon, Parks climbed out of the seat of the automobile and got into the trailer. Mrs. Oder preceded them and did not see what subsequently occurred. Oder drove from the storage place and proceeded down Deborrah Street, across George Street, approaching Branner Avenue. We must assume, for the purposes of this consideration, that Oder stopped at the intersection of Deborrah Street and Branner Avenue. The defendant testified

affirmatively as to this and the other evidence on this point is inconclusive. But the proof is in conflict as to whether he approached Branner for a left hand turn on the left hand side of Deborrah where there was a depression at the intersection of the two streets, or in the middle or right hand side of Deborrah, and as to just what manner of turn he made. However, in the course of the turn to the left on Branner Avenue, for some reason, Parks, who was in the trailer, fell or was thrown out, striking the pavement and receiving injuries from which he died shortly thereafter. The chest of drawers and one chair, at least, were thrown or fell out of the trailer also. The defendant Oder stopped the car within a very short distance, and did not then know, nor does it appear from his testimony that he knew at the time of the trial, just how the accident occurred.

We have here a somewhat novel sequence of circumstances. We think it must be accepted as fact that the deceased was, on this occasion, performing an act of neighborly assistance at the solicitation of the defendant. It is also established by the undisputed proof of the defendant that he took the chair which Oder had given him along on this trip and rode in the trailer upon his own volition. Therefore, viewing the evidence on the whole, as to the relationship of the parties on this occasion, he was a guest rendering a benefit to the host, and, at the same time, himself deriving an incidental benefit. What then were the corresponding rights and duties of the parties?

In Blackfield's Cyclopedia of Automobile Law and Practice, Perm. Ed. Vol. 4, Part 1, Sec. 2371, on the subject of ''Joint Enterprises and Enterprises Confering Benefit on Host'', it is said, ''Even in those jurisdictions where gross negligence, recklessness, or wanton-

ness are required as a basis of a host's liability to an automobile guest, the application of the rule is not extended to other situations, and the rule of ordinary care applies where the injured passenger was riding at the request and for the benefit of the owner, . . ." And we conclude the rule of ordinary care to prevail under the circumstances of the instant case. The paramount purpose of Parks' collaboration with the defendant was to assist in the moving of the latter's furniture, and, as we have heretofore observed, the transportation of the chair which had been given him was merely incidental. What then are the facts with relation to the manner of operation of defendant's automobile and trailer, considered under the import to be accorded them by our established practice? Upon motion for a directed verdict, if, viewing the evidence most favorable to the plaintiff, there is any evidence to support a recovery, it is the duty of the court to submit the case to the jury. American Trust & Banking Co. v. Parsons, 21 Tenn. App. 202, 108 S. W. (2d) 187; and, upon appeal this court, in reviewing the action of the trial court on a motion for a directed verdict, cannot weigh the evidence, but determine whether there was any material evidence to support a verdict in favor of the plaintiff. Martin v. Miller Bros. Co., 26 Tenn. App. 110, 168 S. W. (2d) 187. In a learned compendium relating to this principle, Judge Felts, in Poole v. First National Bank of Smyrna, 29 Tenn. App. 327, 196 S. W. (2d) 563, 567, said, "The rule for determining a motion for a directed verdict has often been stated in numerous cases. It has been fashioned to preserve the constitutional right of trial by jury and to administer the common law separation of function by which the jury try the fact and the judge the law. It requires the trial judge, and the appellate court on review, to look to all the

evidence, to take the strongest legitimate view of it in favor of the opponent of the motion, to allow all reasonable inferences from it in his favor, to discard all countervailing evidence; and if then there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied." Citing Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S. W. 984; Brenizer v. Nashville, C. & St. L. Ry., 156 Tenn. 479, 3 S. W. (2d) 1053, 8 S. W. (2d) 1099; Provident Life & Acc. Ins. Co. v. Prieto, 169 Tenn. 124, 83 S. W. (2d) 251; Osborn v. City of Nashville, 182 Tenn. 197, 185 S. W. (2d) 510; Patillo v. Gambill, 22 Tenn. App. 485, 492, 124 S. W. (2d) 272, 276; Tennessee Cent. Ry Co. v. McCowan, Tenn. App., 188 S. W. (2d) 931.

Considering the case from the standpoint of the evidence as existed at the time of the close of the plaintiff's proof and upon motion for a directed verdict by the defendant, a determination of the sufficiency thereof rests primarily upon the testimony of one Floyd Dixon. This witness testified that he was standing at the corner of Deborrah and Branner Avenue at the time the decedent fell out of the trailer. He was asked:

"Q. Now where was Mr. Oder's car and trailer when you first saw it? A. It was coming right out here.

"Q. Now then, did you see Clifford Parks in the trailer? A. Yes sir.

"Q. What was he doing? A. He was standing up in the trailer holding on to a chest of drawers, and a piece of furniture, a chair I believe.

"Q. Tell this jury just what kind of chair that was. A. It was just a small chair on the back of the trailer, just a small chair.

"Q. Could you say how high the sides of that trailer were. A. I'd say the sides were something like this high.

"Q. That's about twelve or eighteen inches? A. Around twelve or fourteen, something like that.

"Q. What course did Mr. Oder take? A. I stopped right here, so when he got right here, he turned right across this way, over here is a telephone pole, the best I remember, and right here, that trailer commenced turning over and the boy fell out here at the side of the road. And he fell out on his right side.

"Q. Was the furniture that was in the trailer scattered or was it pitched out all together? A. It was kind of together.

"Q. Did it all go out of the trailer or not? A. It went out of the trailer.

"Q. Did all of it go out? A. I couldn't say all of it went out, I didn't notice that, I was excited. I couldn't tell whether all of it went out or not. To my best knowledge, I think it all went out of it.

"Q. Now then, did it scatter as it went along or did it all go out? A. I wouldn't say it scattered along, it just went out of the trailer.

"Q. Did Mr. Oder, in coming in to that avenue or Highway No. 92, did he come to a stop or not? A. When I saw him, I'd say he was 25 yards out this way. And I saw him coming. So I stopped here on the corner, waiting on him to come out and I wouldn't say he stopped or I wouldn't say he didn't. But I don't think he did.

"Q. Now that's a lefthand turn to the left? A. That's right.

"Q. That's about a 90 degree angle turn, right straight around? A. Yes sir.

"Q. Now did you go over to the Parks boy immediately after he fell out? A. I went across to the Parks boy when he hit the ground. Still I didn't know who it was, and I didn't know either one of them."

Subsequently in the examination of this witness, he was asked:

"Q. Tell this jury how he turned the corner there. A. He just come in next to the curb there like that, when he turned up towards town, he come in next to the sidewalk like that, next to the curb, and there was a little dip there, like that next to the curb, and when the trailer hit that little dip there, it give it a tip, and when it did that, the stuff went out of the trailer and the boy too.

"Q. And in other words, there was a little dip there where you were standing right in front of you? A. Right in front of me. Like the street come out this way, there is a low place there, and it kind of—.

"Q. Was there anything over in the middle of the street or over on Oder's right hand side to keep him from pulling out as he should, were there any cars out there? A. No, I don't think so.

"Q. Did you say when he hit this low place, cutting that corner sharp, that that tilted and whipped the trailer, that's what you tell this jury isn't it? A. Yes sir."

■ On cross-examination this witness admitted having talked to the defendant sometime prior to the trial, but denied having then made a statement to the effect that the defendant had made a broad turn at the intersection and did not cut the corner. He admitted that he had been before the court in some proceeding when about fifteen or twenty persons were indicted for larceny. There is no proof, however, of his having been convicted of this or any other charge, other than once or twice in

Knox County for drunkenness. Such evidence does not destroy the testimony of the witness but only goes to the credibility to be accorded him by the jury.

There was other evidence adduced on behalf of the plaintiff as to the location of the decedent, the furniture and the car and trailer after the accident; and mortality tables were introduced to show the expectancy of plaintiff's intestate.

The motion of the defendant for a directed verdict having been overruled, the defendant took the stand and testified that he approached this intersection going not more than five miles an hour; that he stopped at the intersection, entering it slowly on the right hand side of the street; and made a wide turn around a manhole cover located in the approximate center of the intersection, turning left around it on to Branner. Witnesses were introduced in support of defendant's testimony as to the speed he was driving and as to his manner of entering the intersection.

It is to be concluded from the evidence that the decedent fell off of the trailer near the right hand rear corner, but whether the furniture fell out or was pulled over by Parks in falling, is not clear.

It is contended on behalf of the defendant, that there is no proof of negligence on his part and that the proof shows, as a matter of law that the plaintiff was guilty of such negligence as should bar a recovery. As to the latter proposition, we find no direct proof of any negligent act on the part of plaintiff's intestate from which his injuries and death may be said to have resulted. Neither can such negligence be inferred from the fact that he rode in the trailer in the manner disclosed by the proof. As opposed thereto, we have the

principle, adhered to in Tennessee, that there is a presumption of due care by a person killed in an accident, and the kindred rule that ". . . where the loss of memory or other incapacity rendering the survivor incapable of testifying as to the accident is shown to be attributable to such accident, it will be presumed in absence of evidence to the contrary that he exercised due care." This is subject to the equally firm rule that such presumption cannot be used to create an inference of negligence on the part of the defendant. Annotation 144 A. L. R. 1473; Annotation 141 A. L. R. 872; Nichols v. Smith, 21 Tenn. App. 478, 111 S. W. (2d) 911.

The case of Everette v. Evans, 30 Tenn. App. 450, 207 S. W. (2d) 350, relied upon by the defendant, is distinguishable on the facts. In that case, the plaintiff herself testified as to actions on her part to which probable cause of her injuries could be attributed, thus presenting for the jury's consideration, upon submission to it two equal probable causes, for one of which the defendant was not responsible. That is not the case here. There is no proof of any act of probable causation on the part of the defendant, nor circumstances from which the same might be inferred. It cannot be presumed from the fact that he was standing in the trailer in the position shown, that he moved about or otherwise, through some maneuver for which the defendant was not responsible or cognizant, became off balance and fell. On the other hand, there is some proof in support of the acts of negligence and of statutory violations charged in the declaration. There is the testimony of the witness Dixon, afore recited, to the effect that defendant entered the intersection to the left of the center thereof, striking a depression in the street at that point, thereby causing the trailer to tip. While we do not view a violation

by the defendant of the statutory provision, Code Sec. 2682(c), Ninth, as to the manner of executing a left turn at an intersection as constituting proximate cause, as the manifest intendment of such provision was to regulate opposing traffic through the designation of channel patterns and to afford protection to pedestrians, we nevertheless consider his choice of an irregular street surface to demonstrate a course of conduct sufficient to support a jury finding of a lack of ordinary care for the safety of his passenger. Especially is this true, if the normal and proper route, as designated by statute, would have carried him over a smoother portion of the pavement.

There is yet another basis for the submission of the case to the jury. The fact that the chest of drawers and a chair, as well as plaintiff's intestate, became dislodged and fell from the trailer, is, in absence of substantive explanation to the contrary, indicative of the want of care on the part of the defendant in the operation of the car and trailer. Here we find application of the doctrine of res ipsa loquitur, at least in a restricted sense. There being no proof of any negligent act on the part of Parks, the operation of the tandem vehicle being under the sole and exclusive control of the defendant, and the accident being such as in the ordinary course of things does not happen with the use of proper care, and the circumstances being of such character that ". . . there could be no reasonable inference but that the injury complained of was due to the negligence of defendant . . .", 45 C. J. p. 1212, 65 C. J. S., Negligence, Section 220(8), in absence of explanation on the part of the defendant, the want of proper care is to be presumed. Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S. W. (2d) 721, 171 A. L. R. 1200; Towle v. Phillips,

180 Tenn. 121, 172 S. W. (2d) 806; Susman v. Mid-South Fair, 180 Tenn., 471, 176 S. W. (2d) 804; Meadows v. Patterson, 21 Tenn. App. 283, 109 S. W. (2d) 417. Of some similarity to the instant case is the case of Dahl v. Spotts, 128 Cal. App. 133, 16 P. (2d) 774, 775, which was a suit for damages growing out of injuries to the plaintiff when thrown from the bed of a truck when the driver negotiated a right hand turn at a street intersection. Although perhaps distinguishable in certain particulars, the reasoning of the court with respect to the inference arising from the plaintiff's precipitation from the truck, along with a portion of the cargo, is adaptable here. The court therein stated, ''Appellants urge that this evidence fails to support the implied finding of the jury that Spotts was guilty of gross negligence. Were this the only evidence before the jury, we would have to agree with this contention. However, we have concluded that the physical facts of the accident furnished sufficient evidence to support the conclusion that Spotts was guilty of gross negligence in making the turn as he did. The fact that the two cartons, weighing between twenty-five and thirty pounds each, together with an 11 year old boy, were precipitated from the truck onto the pavement during the turn is sufficient to contradict the testimony of Spotts that at that time he was driving at not more than ten miles per hour. These circumstances would support the conclusion that he made the turn at such a great speed or in such a manner as to constitute gross negligence on his part.''

It is our opinion that there was evidence of negligence, predicated upon presumption as well as direct testimony, for submission to the jury; and that there was no error in the action of the trial judge in overruling de-

fendant's motions for a directed verdict. Accordingly, the assignments of error will be overruled and the judgment of the lower court affirmed. The appellant and the sureties on his appeal bond will pay the costs of the appeal.