Kevin L. AMMONS and David Ammons, Plaintiffs–Appellants,

v.

George D. BONILLA and Tammy Patterson, Defendants–Appellees.

Court of Appeals of Tennessee, Western Section at Knoxville.

May 31, 1994.

Application for Permission to Appeal Denied by Supreme Court Sept. 26, 1994.

J. Michael Dixon, Knoxville, for appellants.

Brian H. Trammell, Kennerly, Montgomery & Finley, P.C., Knoxville, for appellees.

CRAWFORD, Judge.

Plaintiff, Kevin Ammons, appeals from the trial court judgment entered on a jury verdict for defendants, George D. Bonilla and Tammy R. Patterson.[1]

Plaintiff's complaint, filed October 1, 1990, alleges that plaintiff was driving a 1987 Yamaha motorcycle in a southerly direction on Martin Mill Pike in Knoxville, Tennessee, and that as he approached the intersection with Tally Ho Drive, which forms a "T"

---

1. Although David Ammons originally filed suit as next friend of Kevin Ammons, Kevin Ammons reached his majority prior to trial, and we will deal with the case as though the suit was originally filed in that manner. We will also make no reference to a defendant dismissed by summary judgment.

intersection from the east without any traffic control devices, he came upon a 1975 Mercedes 240D automobile driven by defendant, Bonilla, and owned by defendant, Patterson. The Mercedes was stopped in plaintiff's lane of travel without any lights or turn signal device in operation. Plaintiff avers that he swerved to the left of the vehicle when suddenly and without warning, the automobile attempted to execute a left turn, but turned into plaintiff's motorcycle, causing him to drive off the roadway and sustain serious, painful and disabling injuries. Plaintiff alleges that defendant Bonilla was driving under the influence of alcohol and was operating the vehicle as the agent and servant of the owner of the automobile, Tammy Patterson, who was a passenger in the automobile at the time of the accident. He further alleges that Tammy Patterson knew that defendant Bonilla was under the influence of alcohol and therefore was negligent in allowing him to drive the vehicle. Plaintiff further avers that defendants were negligent in driving without lights and without using a turn signal, and that defendants violated T.C.A. §§ 55–8–136, 55–8–143, 55–8–140 and 55–8–142.

Defendants' answer admits that a collision occurred at the intersection of Martin Mill Pike and Tally Ho Drive, but denies that they were guilty of negligence. The answer avers that Bonilla was at all times driving in a safe and prudent fashion, that he had slowed the vehicle for a left-hand turn onto Tally Ho Drive from Martin Mill Pike, and that he had duly signaled with his left turn signal. Just as he began to execute the turn, plaintiff came from behind him at a high rate of speed and attempted to pass him on the left by crossing over the double yellow line. Although Bonilla admits the consumption of a small amount of alcoholic beverages on the evening in question, he denies that he was impaired in any manner or guilty of any negligence whatsoever. The defendants further aver that the sole proximate cause of the accident was the negligence of the plaintiff in that he (1) failed to keep a proper lookout, (2) failed to operate the vehicle at a reasonable speed, (3) operated his motorcycle under the influence of alcohol, (4) failed to give due regard to the rights and safety of others, (5) failed to keep his vehicle under

proper control, (6) attempted to pass another vehicle without ascertaining the safety of doing so and (7) attempted to pass another vehicle by crossing the double yellow line. Furthermore, defendants aver that plaintiff violated the following statutes of the State of Tennessee: T.C.A. § 55–8–119, 55–8–120, 55–8–121, 55–8–123, 55–8–143(e), 55–8–152, and 55–8–181.

Although the complaint did not set out the date of the accident, the proof showed that the accident occurred on October 3, 1989, during the early morning hours while it was still dark.

Plaintiff testified that he was riding his motorcycle after visiting a girlfriend. He was proceeding south on Martin Mill toward the intersection of Tally Ho. He testified that the intersection was extremely dark because a street light was out, and he suddenly came upon the vehicle occupied by the defendants. The vehicle had no lights illuminated or any type of turn signal engaged, and in order to avoid striking the rear of this vehicle, plaintiff swerved his vehicle to the left. As he was passing the vehicle, it turned into him causing the crash and his injuries. Bonilla and Patterson testified that the automobile lights were on as they were proceeding down the street, and that Bonilla had turned on the left turn signal some distance before the intersection. As Bonilla started the turn, plaintiff's motorcycle came around on the left side of the automobile, and the collision occurred. Both defendant Bonilla and defendant Patterson testified that the turn signal indicator worked properly and had never given them any trouble either in activating the signal light or in staying in position once it was engaged.

Officer Michael Sullivan, the Knoxville police officer who investigated the accident, testified that on the night of the accident, the intersection of Martin Mill Pike and Tally Ho was lighted by street lights and that the only light not working was the one directly opposite the intersection itself. He testified that the lighting conditions were such that he could see all the way from the scene of the accident to Avenue A, which is 100 yards or more to the north. He also testified that by

looking south from the crest of the hill, he could see the scene of the accident and beyond. When Officer Sullivan checked after the accident, the turn signals on defendants' vehicle were functional. He also testified that Bonilla was not intoxicated and passed the tests administered to him.

Defendants presented the testimony of an accident reconstructionist, Bobby Jones. He testified concerning his many visits to the scene and the information he had acquired concerning the accident, and opined that there was sufficient lighting on Martin Mill Pike at the time of the accident to see vehicles in the roadway even if one of the street lights was out. He also stated that in his opinion, even if there were no street lights at the intersection, the headlights of the motorcycle, if properly adjusted, should have revealed an unlighted vehicle two hundred feet ahead. He further opined that based upon his calculations, if plaintiff had been traveling at the speed limit, he should have been able to perceive the automobile and stop his motorcycle well before reaching the intersection. He further concluded that based upon his measurements and other calculations, plaintiff was traveling at approximately 54 miles per hour at the point of impact. Other witnesses testified, but in view of the issues presented on appeal, we do not deem it necessary to prolong this opinion by detailing their testimony.

The jury found that defendant Bonilla was negligent, but that his negligence was not a proximate cause of the accident and resulting injuries to the plaintiff. The trial court entered judgment on the jury verdict and subsequently denied plaintiff's motion for a new trial.

■ Plaintiff's first three issues for review are whether the trial court erred in excluding the testimony of Dr. Jack Humphreys, plaintiff's accident reconstruction expert, Officer Phil Mallock, offered as an expert witness concerning alcohol consumption, and Don Gibson, a mechanical expert, on the grounds that plaintiff did not supplement the answers to interrogatories to reveal the names of the expert witnesses.

In November, 1990, defendants propounded interrogatories to plaintiff, and on Febru-

ary 13, 1991, plaintiff filed answers to the interrogatories. The interrogatories and answers pertinent to the issue before us provide as follows:

10. List the names and addresses of any and all persons who have knowledge of facts supporting the allegations contained in your Complaint. State the substance of facts known by each of these individuals.

ANSWER: Unavailable at the present time.

11. Identify each person that you expect to call as an expert witness at trial and state the subject matter on which said expert is expected to testify.

ANSWER: None at this time.

12. State the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

ANSWER: N/A.

Plaintiff did not supplement the interrogatory answers. On the day of the trial or the day before, defendants filed a motion in limine to exclude the testimony of the witnesses for failure of plaintiff to supplement the interrogatory answers. Plaintiff responded to the motion and attached copies of correspondence concerning the witnesses and their availability for deposition. Plaintiff asserts that defendants were well aware that Dr. Humphreys would testify as an expert on behalf of plaintiff because they were told that a subpoena had been issued for Dr. Humphreys at a prior trial setting when the case had been continued. The response also indicates that plaintiff had revealed to defendants the identity of another expert witness, Dr. Pedigo, but that Officer Mallock would testify in place of Pedigo because Pedigo was unavailable for this trial. Plaintiff's counsel further asserts that he informed defense counsel that he was available to take the depositions of these parties at any time, but that defense counsel did not attempt to take the depositions. Apparently, the substance of the experts' testimony was never divulged to defendants.

Tenn.R.Civ.P. 26.05 provides in part pertinent to the issue before us:

**26.05. Supplementation of Responses.—** A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) A party is under a duty·seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

\* \* \* \* \* \*

Obviously, there was a conflict between counsel concerning defendants' knowledge of the existence and identity of the expert witnesses, as well as the opportunity to depose the witnesses in a reasonable time prior to trial. It was clear, however, that the interrogatory answers were not supplemented as required by the rule, and the trial court in its discretion excluded the testimony of those expert witnesses. In *Lyle v. Exxon Corp.*, 746 S.W.2d 694 (Tenn.1988), the Court said:

Although the rules do not provide a sanction for abuse of the discovery process, the inherent power of trial judges permits the trial judge to take appropriate corrective action against a party for discovery abuse. *Strickland v. Strickland*, 618 S.W.2d 496, 501 (Tenn.App.1981).

Excluding the testimony of an expert witness may be an appropriate sanction for failure to name the witness. However, other sanctions may be appropriate where the failure to name an expert witness is not knowing and deliberate. In determining the appropriate sanction the trial judge should consider:

1. The explanation given for the failure to name the witness.

2. The importance of the testimony of the witness;

3. The need for time to prepare to meet the testimony; and

4. The possibility of a continuance.

*Id.* The trial court's determination of the appropriate sanction to be imposed will not be disturbed on appeal unless the court commits an abuse of discretion. *See Brooks v. United Uniform Co.*, 682 S.W.2d 913 (Tenn.1984).

746 S.W.2d at 699.

The record reflects that plaintiff's counsel made no offer of proof to the trial judge at the time he ruled on the motion in limine, and the only offer of proof concerning witnesses Humphreys and Gibson was in the form of an affidavit filed with the motion for a new trial. As reflected in the record, it appears that plaintiff's counsel had not apprised the trial court of the proposed testimony of the witnesses at the time the court ruled on the motion in limine, and under the circumstances disclosed by the record, we cannot say that the trial court abused its discretion in excluding the testimony of these witnesses. As for Officer Mallock, there was apparently no disclosure of this witness prior to the issuance of his subpoena for trial. Moreover, from our review of the proposed testimony of these witnesses as stated in the record, it does not appear that the exclusion of the testimony more probably than not affected the judgment of the jury in ruling upon the facts of the case. *See* T.R.A.P. 36(b). We also note that after the court ruled on the motion in limine, the plaintiff elected to proceed to trial rather than move for a continuance in order to properly supplement the interrogatory answers and allow for the taking of the discovery depositions, if desired. Even if the court had clearly abused its discretion in excluding the testimony of these witnesses, it is equally clear that plaintiff failed to take any action to "prevent or nullify the harmful effect of an error." T.R.A.P. 36(a).

■ Plaintiff's next issue presented for review, as stated in his brief, is:

4. Did the trial court err in excluding the turn signal from the defendant vehicle which was offered as an exhibit by the appellants, on the ground that the evidence as too remote in time from the accident which is the subject of this litigation?

The record indicates that four months after the accident involving the parties in this

case, the Mercedes automobile was extensively damaged in another accident and was then parked in a pasture in Georgia. In June of 1992, plaintiff's father, David Ammons, and plaintiff's lawyer went to Georgia and removed the turn signal indicator from the vehicle without any authorization from the owner. Plaintiff sought to introduce the turn signal into evidence to show that it had become worn to the extent that it would not stay in a locked position and give a signal once engaged, contrary to the testimony of defendants. The trial court noted that four months time had passed between the date of the accident in this case and a subsequent accident that severely damaged the automobile. The vehicle then sat in a pasture for some two years before the turn signal device was removed. In ruling on the objection, the court said:

THE COURT: Well, it is the court's opinion, based upon the representations that have been made about the proof that would be offered, that if the evidence has any relevance under rule 401 of the Tennessee Rules of Evidence, that such relevance is outweighed substantially by the danger of misleading the jury here and engaging in speculation.

And it appears to the court that with the passage of four months—at least four months' time, and with the evidence already in the record that sometime in February of 1990 the vehicle was damaged in a rear-end type accident to the extent that it was taken out of service or, as sometimes said, rendered a total loss, and in view of the fact that after that it sat without any evidence whatsoever of—about the custody of the vehicle, it sat in some cow pasture down in Georgia, the court is constrained to find that the evidence is too remote and any probative value it might have is outweighed substantially by the danger of confusion of the issues and misleading [the] jury. I am compelled to sustain the objection.

Tennessee Rule of Evidence 401 provides:

**Rule 401. Definition of "relevant evidence".**—"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

We have serious reservations that the condition of the turn signal several years after the accident would qualify as relevant evidence under this definition. However, the trial court, exercising its discretion in consideration of Tennessee Rule of Evidence 403, excluded this evidence and we agree that the trial court acted properly.

■ The next issue for review, as stated in appellant's brief, provides as follows:

5. Did the trial court err in excluding the testimony of Sandy Ammons regarding the condition of the defendant vehicle [sic] brake lights and turn signal as too remote in time?

This alleged error is not stated in the motion for new trial and as a result cannot be raised on appeal. T.R.A.P. 3(e). Moreover, there is no proof that Mrs. Ammons observed any relevant actions of the operator of the vehicle, such as turning on the lights or engaging the turn signals. This testimony simply does not qualify as relevant evidence.

■ The next issue for review is whether the trial court erred in refusing to give plaintiff's special request for instruction as follows:

If you find that the Plaintiff in this case, as a result of the accident in question, suffered a loss of memory so as to be unable to testify as to his conduct at the time of and immediately preceding the accident here in question, then I instruct you that the law presumes the Plaintiff, in his conduct at the time of and immediately preceding the accident was exercising ordinary care.

This presumption is a form of evidence. It will support a finding in accord with the presumption where there is no proof to the contrary; and it will support such a finding in the face of contrary evidence if your judgment so directs after weighing the conflicting evidence.

When such a conflict exists, it is the jury's duty to weigh the presumption against the contrary evidence and to determine which,

if either, preponderates. Such deliberations, of course, shall be related to and be in accordance with my instructions on the burden of proof.

*Schultz & Lindsay Construction Company v. Erickson,* 352 F.2d 425 (1965) and *McCormick, on Evidence,* Sections 314, 315, 316 and 317 (1954).

In *Oder v. Parks,* 34 Tenn.App. 303, 237 S.W.2d 571 (1948), the court said:

[W]e have the principle, adhered to in Tennessee, that there is a presumption of due care by a person killed in an accident, and the kindred rule that " * * * where the loss of memory or other incapacity rendering the survivor incapable of testifying as to the accident is shown to be attributable to such accident, it will be presumed in absence of evidence to the contrary that he exercised due care." This is subject to the equally firm rule that such presumption cannot be used to create an inference of negligence on the part of the defendant.

237 S.W.2d at 576 (citations omitted).

In the case before us, plaintiff was able to testify concerning the facts of the accident. The presumption of due care arising out of the natural instinct of self-preservation is applicable only in the absence of evidence. *See Phillips–Buttorff Mfg. Co. v. McAlexander,* 15 Tenn.App. 618 (1932). The trial court correctly refused the special request for instruction.

■ Appellant's next issue for review provides as follows:

7. Did the trial court err in refusing appellants' requested new trial on the ground that appellees' counsel was guilty of intentional misconduct in revealing to the jury a speeding citation received by the plaintiff Kevin Ammons which had *nothing to do* with the facts of this case?

Defendants' counsel cross-examined plaintiff concerning his motorcycle and the speed that it could attain. Plaintiff testified that its top speed was about one hundred miles per hour, and defendants' counsel then asked plaintiff if he had ever had any speeding tickets on the motorcycle. Plaintiff's counsel immediately objected and asked the court to instruct the jury concerning the impropriety

of the question. The court instructed the jury that they should disregard the question. Plaintiff's counsel asked for neither a mistrial nor any other curative instruction, and the matter was placed to rest. We find no intentional misconduct on the part of defendants' counsel. Moreover, it does not appear that this incident had any effect on the jury verdict.

■ The next two issues presented for review, as set out in appellant's brief, are:

8. Did the trial court err in its instructions to the jury by repeating on more than one occasion an instruction that indicated to the jury, that just because a party was guilty of negligence did not mean that the negligence was the proximate cause of the accident, which repetition had the effect of emphasizing this portion of the court's charge to the jury?

9. Did the trial court err in repeating its instruction to the jury that a motorist has the duty to see whatever is there to be seen, thereby unduly emphasizing this aspect of the court's instruction to the jury?

We have examined the court's instructions to the jury as a whole and find that the court gave a full, fair and complete charge to the jury and duly cautioned the jury that certain instructions should not be singled out and others disregarded. The trial court also instructed the jury that they had the sole duty and exclusive responsibility of reaching a verdict, and that nothing the trial judge had done should be any indication of a preference for a verdict either way. Considering the charge to the jury as a whole, we find this issue to be without merit.

■ The last issue presented for review, as stated in appellant's brief, is:

10. Did the court err in its instructions to the jury by instructing on a number of statutory violations which had no application to this case?

Plaintiff asserts that the trial court erred in charging the jury about the violations of the following statutes: (1) T.C.A. § 55–8–120(a)(2), which forbids passing at an intersection, (2) T.C.A. § 55–8–121, which concerns designation of a no passing zone, (3)

T.C.A. § 55–8–123, which concerns changing lane of travel, and (4) T.C.A. §§ 55–9–403 and 55–9–406, which concern the headlights on a vehicle. The record reflects that the evidence in the case supports instructions regarding these statutes that each party relied upon in the pleadings. This issue is without merit.

The judgment of the trial court is affirmed. Costs of the appeal are assessed against the appellant.

HIGHERS and FARMER, JJ., concur.