# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 2000 Session

## LAURA COFFEY, ET AL. v. CHEROKEE AVIATION, INC.

**Appeal from the Circuit Court for Knox County**
**No. 2-361-96     Harold Wimberly, Judge**

---

### No. E1999-01037-COA-R3-CV

---

This is an appeal from a jury verdict finding Cherokee Aviation, Inc. not liable for the deaths of Steven Coffey and Peggy Cowan in a plane crash. Laura Coffey and Peter Cowan, the surviving spouses of the deceased, moved for a new trial on the basis of certain testimony which was admitted or denied admission by the Circuit Court during trial. The Circuit Court denied the motion for a new trial and this appeal ensued. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ. joined.

Robert J. English, Knoxville, Tennessee, for the appellant, Laura S. Coffey, and Rufus Beamer, Knoxville, Tennessee, for the appellant, Peter R. Cowan

William A. Simms and Chris T. Cain, Knoxville, Tennessee, for the appellee, Cherokee Aviation, Inc.

### OPINION

On July 13, 1995, Steven Lee Coffey was the pilot of a Piper aircraft in which his mother-in-law, Peggy Smith Cowan, was the passenger. They departed from the Knoxville Downtown Island Airport and were flying to Hilton Head Island Airport. Before they reached their destination, the plane crashed and both died. On June 3, 1996, the surviving spouses of the deceased, Laura S. Coffey and Peter R. Cowan, filed a complaint against Cherokee Aviation, Inc. Cherokee performed an annual and 100 hour inspection on the subject aircraft and represented the aircraft to be in airworthy condition. The Plaintiffs alleged that Cherokee was negligent in performing the inspections of the aircraft because its employees failed to replace the flexible fuel lines which ruptured causing an in-flight fire and the subsequent crash. Cherokee alleged there was no in-flight fire and the crash occurred due to pilot error, not their negligence.

The first trial ended in a mistrial in April 1998. The second trial occurred at the end of January through early February 1999 and the jury returned a verdict in favor of Cherokee.

The Plaintiffs filed a motion for new trial, which the trial court denied. The Plaintiffs raise the following issues:

I.      Did the Trial Court err by admitting into evidence and allowing Defendant to read to the jury the report and opinion of National Transportation Safety Board (NTSB) Investigator Timothy Monville?

II.     Did the Trial Court err by allowing Defendant's second medical expert, Dr. Berry, to read to the jury the reports of Defendant's third and fourth medical experts Drs. Cagle and Weilbaecher, which were prepared too late to permit discovery?

III.    Did the Trial Court err by excluding from the jury the admission of Defendant's first medical expert, Dr. Lovell, that there could have been an in-flight fire?

We find that the Trial Court committed no error and affirm.

The record on appeal with this Court is incomplete in that only certain witnesses' testimonies were filed. An entire transcript of the trial below was not filed. We can only review what is part of the record on appeal. Accordingly, we only discuss the testimonies relevant to the issues raised on appeal and provided in this record. Portions of witnesses' testimonies included in the record and relevant to this appeal are those of Don Lykins, Dr. Cleland Blake, Dr. Joe Wilkerson, Justin Patterson, Joshua Ryan, William Newton, Barbara Newton, J. Reid Garrison and Norman J. Alvares. We will briefly describe their testimonies.

Justin Patterson and Joshua Ryan saw Mr. Coffey's airplane before the crash. Mr. Patterson, an employee of the Hilton Head Airport, was directing a corporate plane to a parking space when Mr. Ryan, a co-worker, notified him to look at Mr. Coffey's airplane. The plane appeared to be making a final approach to runway three, but, according to Mr. Ryan, the plane was too low. Then the plane suddenly turned to the right away from the airport and disappeared from their view below some trees. They did not see smoke coming from the plane prior to it disappearing from their view. They saw smoke rising above the trees a few seconds after the plane disappeared below the trees. J. Reid Garrison was piloting a plane at Hilton Head Airport on the day of the crash. He heard Mr. Coffey calmly report his intention of a long final approach. He never saw Mr. Coffey's plane, but he saw smoke rising.

William and Barbara Newton were in their car on a road close to the Hilton Head Airport on the day of the crash. Suddenly, they heard a loud noise and saw a wire from an electric pole in front of them on the road. Mr. Newton stopped the car as the wire was popping and moving. As they were discussing what caused the wire to fall, they saw a sheet of flames cross the road. The fire culminated behind trees to the left of them with dark smoke rising. In a few seconds

after the fire ended, they saw the tail section of a plane. Mr. Newton drove to a nearby fire station to notify the proper authorities of the accident.

Don Lykins, Plaintiffs' Aircraft Accident Reconstruction Expert, opined that an in-flight fire occurred based upon witnesses' statements and his investigation of the wreckage. Dr. Joe Wilkerson, Cherokee's Aeronautical Expert, concluded that Mr. Coffey failed to perform a sufficient pre-flight inspection of his aircraft by draining the fuel to check for water in the fuel. Dr. Wilkerson opined that water was in the fuel tank when Mr. Coffey switched from using the right fuel tank to the left fuel tank. The water was injected into the engine and caused a partial power loss from which Mr. Coffey was unable to recover.

Norman Alvares, Cherokee's Fire Expert, concluded that there was no in-flight fire. His investigation showed that the cockpit of the plane was burned post-crash. He examined various parts of the plane and determined that no in-flight fire occurred because the soot patterns appeared to be post-crash or there was no evidence of soot or fire damage to certain parts which would have soot or fire damage if an in-flight fire occurred. Dr. Cleland Blake, Plaintiffs' Medical Expert, determined there was an in-flight fire by studying slides of the victims' lung tissues, toxicology reports, autopsy reports and the burned areas on the victims' bodies. Dr. Blake agreed that it was accepted standard medical practice to consult with other doctors who are specialized in a certain area of medicine.

## STANDARD OF REVIEW

An appellate court's standard of review for a jury verdict approved by a trial court is determining whether there is any material evidence to support the verdict. Tenn. R. App. P. 13(d). The Tennessee Supreme Court further explained our reviewing process as follows:

> It is the time honored rule in this State that in reviewing a judgment based upon a jury verdict the appellate courts are not at liberty to weigh the evidence or to decide where the preponderance lies, but are limited to determining whether there is material evidence to support the verdict; and in determining whether there is material evidence to support the verdict, the appellate court is required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to discard all to the contrary. Having thus examined the record, if there be any material evidence to support the verdict, it must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury.

Crabtree Masonry Co. v. C & R Constr., Inc., 575 S.W.2d 5 (Tenn. 1978)

Regarding evidentiary issues, the trial court possesses wide discretion in determining the admissibility of evidence. We review the trial court's decision under an abuse of discretion standard. Otis v. Cambridge Mut. Fire Ins. Co., 850 S.W.2d 439, 442 (Tenn.1992); Hunter v. Burke, 958 S.W.2d 751, 755 (Tenn. Ct. App. 1997).

ALLOWING TIMOTHY MONVILLE'S DEPOSITION TO BE READ

Timothy Monville was the National Transportation and Safety Board Investigator who investigated the airplane crash involved in this litigation. Mr. Monville prepared an accident report as part of his investigation. During his deposition, Mr. Monville referred to and quoted from his accident report and the accident report was filed as an exhibit to his deposition. Portions of Mr. Monville's deposition were read to the jury during the trial. The Plaintiffs objected to Mr. Monville's deposition being read to the jury and specifically objected to a certain sentence from the report and deposition which was read to the jury. The sentence read as follows: "Examination of the engine compartment area revealed no evidence of an in-flight fire."

There are federal rules governing the allowance of and scope of an NTSB employee's testimony. See 49 Code of Federal Regulations § 835.1-.11 (2000). When an employee testifies, he is allowed to use a copy of the factual accident report he prepared as a testimonial aid. See 49 C.F.R. § 835.4(a) (2000). While testifying, the employee may refer to and cite from the factual accident report. See 49 C.F.R. § 835.4(a) (2000). Regarding the admissibility of the factual accident report, "[t]he Board does not object to, and there is no statutory bar to, admission in litigation of factual accident reports." 49 C.F.R. § 835.2 (2000). However, the employee is expressly forbidden from using the Board's accident report for any purpose during his testimony. See 49 C.F.R. § 835.4(b) (2000). The Board's accident report contains the Board's determination of the probable cause of an accident, but the factual accident report contains the results of the investigation by the Board's investigator. See 49 C.F.R. § 835.2 (2000). The Board's accident report, containing the probable cause of an accident, cannot be used in litigation for any purpose because of "Congress' 'strong * * * desire to keep the Board free of the entanglement of such suits'. . . and . . .to ensure that the Board does not exert an undue influence on litigation." 49 C.F.R. § 835.3 (2000) (citation omitted).

In addition to the federal rules governing Mr. Monville's testimony, the Tennessee Rules of Evidence apply. The Plaintiffs objected to the reading of Mr. Monville's testimony, which included direct quotes from his accident report, as violating the hearsay rule. Specifically, the Plaintiffs argue that the report was inadmissible because it did not fall within the hearsay exception for public records and reports, Tenn. R. Evid. 803(8). It appears from the record that the report itself was not entered into evidence at trial. The report was filed as an exhibit to Mr. Monville's deposition, but Mr. Monville's deposition was not entered into evidence in its entirety. In reality, portions of the report were admitted into evidence through the reading of portions of Mr. Monville's deposition.

Mr. Monville's report contained sections for History of Flight, Wreckage, Impact Information, Medical and Pathological Information, Fire and Additional Data. In his deposition and report, Mr. Monville described the crash site and the plane wreckage. He described different tests he performed on the plane as part of the investigation. Included within his report was the substance of interviews with persons who saw the plane before it crashed. Nathan Trent observed Mr. Coffey performing a preflight inspection of the airplane. Sandra Cole saw the airplane clear trees, descend and collide with power lines. Ms. Cole observed white/gray smoke from the left wing of the airplane after collision with the power lines. After his investigation,

Mr. Monville concluded that the airplane first made contact with 80-foot tall trees, then a power line, then the roadway and power line pole. Mr. Monville's testimony was not used as expert opinion regarding whether an in-flight fire occurred. Although he made a statement regarding lack of evidence of an in-flight fire, this statement was included within his observations of the engine compartment area where he determined if there was "any area of torching" and found that the "fire wall was not heat damaged or burned through."

The Plaintiffs rely upon the Advisory Commission Comments to Tennessee Rule of Evidence 803(8), which state that the Commission "expressly rejected federal subsection (C) [of Federal Rule of Evidence 803(8)] on factual findings from investigations." Advisory Commission Comments are persuasive authority for our interpretation of the rule. See Covington v. Acuff, 1997 WL 626872, *2 (Tenn. Ct. App. 1997). "[The Comments] cannot, however, alter the meaning of a rule, and courts need not resort to them when the text of the rule is clear." Covington, 1997 WL 626872 at * 2 (citations omitted). Tennessee Rule of Evidence 803(8) provides a hearsay exception for: "reports . . .setting forth . . . matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, excluding, however, matters observed by police officers and other law enforcement personnel." The National Transportation and Safety Board has a duty to investigate and report its findings from a plane crash such as the one involved in this case. See 49 U.S.C.A. §§ 1131–32 (2000). Applying the plain language of the rule, Mr. Monville's factual accident report could be admitted into evidence as a hearsay exception.

In Tennessee, there are statutes which prohibit admitting certain reports into evidence. Under Tennessee law, a driver of a vehicle involved in an accident which causes bodily injury or death or property damage above $400 must file a report with the Department of Safety. See Tenn. Code Ann. § 55-10-107(a) (2000). The reports filed to the Department of Safety are inadmissible in any trial arising from the accident, civil or criminal. See Tenn. Code Ann. § 55-10-114(b) (2000). Additionally, the Department of Safety's determination of fault is inadmissible. See Tenn. Code Ann. § 55-12-108(b) (2000). The difference between these reports and the NTSB factual report is that there is a determination or admission of fault in the reports excluded by statute. Mr. Monville's testimony did not contain a determination of fault. Another reason for excluding the accident reports in T.C.A. Section 55-10-114(b) is their inherent unreliabiltiy. Mr. Monville's testimony was reliable because Mr. Monville prepared the report from which he read and defense counsel had ample opportunity to cross examine Mr. Monville during his deposition. The Trial Court did not commit error by allowing Mr. Monville's deposition, including portions of the report, to be read to the jury.


ALLOWING DR. BERRY'S TESTIMONY

Dr. Charles Berry was one of Cherokee's experts who practices in the area of aerospace and preventive medicine. Dr. Berry is not a board certified pathologist, but he has some training in pathology. His expert opinion was that there was no in-flight fire. He reached this conclusion by reviewing slides of the lung tissue of Mr. Coffey and Ms. Cowan. Before he consulted with

any other doctors, he determined that there was no pathological evidence indicating an in-flight fire. He initially consulted Dr. Weilbaecher, a board certified pathologist. Dr. Weilbaecher suggested they consult Dr. Cagle, who is the director of a pulmonary pathology center. Both Dr. Weilbaecher and Dr. Cagle wrote reports and sent them to Dr. Berry. Both doctors corroborated Dr. Berry's opinion that there was no in-flight fire. Dr. Berry testified that it was standard medical practice to consult with other doctors who were specialized in areas outside your own expertise. Dr. Berry relied upon the reports and opinions of Dr. Weilbaecher and Dr. Cagle in forming his expert opinion. Dr. Berry did not read the other doctors' reports to the jury. The reports were not entered into evidence or shown to the jury. One sentence of Dr. Berry's testimony is a summary of their conclusions: "Well, in short, both Dr. Weilbaecher and the pulmonary specialist Dr. Cagle said that it is their opinion that the changes–that there were no pathologic changes being shown in the bronchioles as I showed you."

The Plaintiffs argue that Dr. Berry's testimony regarding the reports of Dr. Weilbaecher and Dr. Cagle should not have been admitted because the Plaintiffs were unable to depose either of the doctors. In fact, the Trial Court quashed Cherokee's notices of depositions for the two doctors because the depositions were scheduled to occur too close to the trial date. Plaintiffs cite Ammons v. Bonilla, 886 S.W.2d 239 (Tenn. Ct. App. 1994) in support of their argument that Dr. Weilbaecher's and Dr. Cagle's reports should not have been mentioned in Dr. Berry's testimony. In Ammons, the Trial Court excluded the testimony of three expert witnesses because the plaintiff failed to supplement answers to interrogatories regarding the identity of witnesses. See Ammons, 886 S.W.2d at 242-43. Cherokee supplemented its answers to interrogatories and informed Plaintiffs of Dr. Weilbaecher and Dr. Cagle. The Trial Court did not allow them to testify, but their opinions were relied upon by the testifying expert Dr. Berry. Although there was not time to depose these witnesses prior to trial, Plaintiffs' trial counsel was given copies of the doctors' reports prior to trial.

Tennessee Rule of Evidence 703 describes the proper bases of opinion testimony by experts as follows: "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness." Dr. Berry and Dr. Blake, Plaintiff's Medical Expert, both testified that it was standard medical practice to consult with other doctors who are specialized in a certain area and rely on their opinions. The reports of Dr. Weilbaecher and Dr. Cagle would not be admissible evidence. However, Dr. Berry could rely upon inadmissible evidence in forming his opinion. See Willamette Industries, Inc. v. Tennessee Assessment Appeals Commission, 11 S.W.3d 142, 150 (Tenn. Ct. App. 1999) (real estate expert relied upon inadmissible hearsay in forming his opinion). The trial court did not err in allowing Dr. Berry to testify regarding the reports he relied upon in reaching his opinion.

### DENYING ADMISSION OF DR. LOVELL'S TESTIMONY
Dr. Warren Lovell was designated as one of Cherokee's potential expert witnesses for the first trial. On April 22, 1998, Cherokee filed a supplemental answer to interrogatories wherein Cherokee stated Dr. Lovell would not be called as a witness at trial. Prior to the first trial, Dr.

Lovell testified by deposition and only a small portion of Dr. Lovell's deposition was filed with the record on appeal. Dr. Lovell stated: "I can't say for certain whether there was an in-flight fire or not." He attributed his uncertainty to the limited material he had received to review in order to determine whether there was an in-flight fire.

On January 19, 1999, Cherokee filed a Motion in Limine to prohibit Plaintiffs, Plaintiffs' counsel or any of Plaintiffs' witnesses from reading Dr. Lovell's deposition into evidence or making any reference to Dr. Lovell being retained and subsequently "terminated or fired" by Cherokee. There is no evidence in the record on appeal, by order or during a motion hearing, that the Trial Court ever ruled on Cherokee's Motion in Limine. Additionally, there is no evidence that the Plaintiffs attempted an offer of proof concerning Dr. Lovell. During Plaintiffs cross-examination of Dr. Berry, the following occurred:

Q. And how many pathologists totally have looked at this case on behalf of the defendant, if you know sir?
A. On behalf of the defendant?
Q. Any other pathologists?
A. The only other one - -
Mr. Simms: I'm going to interpose an objection to that on the basis of previous proceedings that we have had before the Court.
Mr. English: I'm not asking for a name, Your Honor. I'm just asking if any other pathologists have looked at this case on behalf of the defendant, to your knowledge?
The Witness: I don't know. You say "on behalf of the defendant," and obviously the pathologist that did the autopsy looked at the - -
Q. I'm talking at the direction and on behalf of the defendant. Did you read a deposition of a pathologist that looked at this - - into this case before you got into this case, sir?
A. Yeah. I don't know if that was for the defendant or not.
Q. Beg your pardon?
A. Yeah, but I'm not sure who it was for. Yes, I did.
Q. You read a deposition of a pathologist?
A. Yes, I did.
Q. But did you take that into consideration?
A. Well, I took it into consideration.
Q. You did?
A. Yeah.

That is the only testimony found in the entire record on appeal which made a vague reference to Dr. Lovell. The Trial Court did not order Plaintiffs' counsel to refrain from that line of questioning. Plaintiffs' counsel did not attempt to offer any proof regarding Dr. Lovell's opinion or the fact that Dr. Lovell was at one time designated to be a potential expert witness for Cherokee and then was replaced by Dr. Berry. Without an offer of proof, the trial court did not rule on this issue. It appears that the Plaintiffs are arguing that it is obvious from the record what they intended to offer as proof. "[W]here an appellant fails to make an offer of proof we will not

reverse a Trial Judge on that evidentiary issue." <u>Shepherd v. Perkins Builders</u>, 968 S.W.2d 832, 834 (Tenn. Ct. App. 1997).

Because the Plaintiffs failed to make an offer of proof, we need not discuss their arguments regarding allowing cross-examination regarding bias and prejudice and admitting Dr. Lovell's statement as an admission by an agent. Lastly, Plaintiffs assert that a missing witness jury instruction should have been given. However, there is no indication in the record that the Plaintiffs asked for this instruction.

After hearing all the evidence, the jury returned a verdict for Cherokee and the Trial Court approved its verdict. The jury and Trial Court are in the best position to evaluate the evidence. We find there was material evidence to support the verdict.

For the foregoing reasons the judgment of the Circuit Court is affirmed and the cause remanded for the collection of costs below. Costs of appeal are adjudged against Laura S. Coffey, Peter R. Cowan and their sureties.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE